### MEYER et al. v. WINEBURGH.

#### Civ. A. 862–53.

United States District Court
District of Columbia.

March 25, 1953.

Philip W. Amram, Washington, D. C., for plaintiff.

Charles E. Ford and H. Clifford Allder, Washington, D. C., for defendant.

MORRIS, District Judge.

In this action the plaintiffs seek relief against the defendant to enforce certain provisions in a contract of employment entered into between the parties on the third day of September 1947, wherein the plaintiff agreed to employ the defendant at a salary of $80 per week, such employment to be terminable by either party upon notice in writing. Contained in said agreement are certain provisions wherein the defendant agreed not to disclose to any person, firm or corporation the name, address or requirements of customers of the company, nor to divulge any other information acquired during said period of employment, and further, upon the termination of employment, that he would surrender to the company all lists, books and records of, or in connection with, the company's customers or business, and further "that he will not for a period of five years after the end or termination of his employment, irrespective of the time, manner or cause of the said termination directly or indirectly, either as principal, agent, employee, employer, stockholder, co-partner or in any other individual or representative capacity whatever, solicit, serve or cater to, or engage, assist, be interested in or connected with any other person, firm or corporation soliciting, serving or catering to any of the customers served by him, or by any other employee of the company, within a radius of thirty

4. Bailey v. Richardson, 86 U.S.App.D.C. 248, 182 F.2d 46, 57, affirmed 341 U.S. 918, 71 S.Ct. 669, 95 L.Ed. 1352; Angilly v. United States, supra.

958

miles of any office or offices with which he has been directly connected."

The present matter before the Court is an application for a temporary injunction to restrain the defendant from violation of the agreements above set forth. A hearing was had, at which time substantial evidence was taken, and argument of counsel was had. Subsequently, at the request of the Court, briefs of counsel have been submitted.

Certain facts have been definitely established: The plaintiffs, with their predecessors in interest, have been continuously in the business of pest extermination and control services since 1899, with their principal office in the City of Philadelphia, Pennsylvania, and with a branch office in the District of Columbia continuously since the year 1906. The defendant, prior to his employment by the plaintiffs, had acquired considerable knowledge of various phases of pest extermination and control, but had never been engaged in the business of rendering such services to the public. At the time of his employment, he was receiving a salary of $80 a week, employed by the Public Health Service of the United States Government, and on loan to the Government of the District of Columbia. He was employed as manager of the District of Columbia Branch Office, which had theretofore been managed by an employee of the plaintiffs who supervised both the Baltimore and Washington offices. The business of the Washington office increased substantially during the period of defendant's employment, which terminated by resignation, which the plaintiffs sought to have him withdraw, on January 17, 1953. During the period of his employment his salary was variously increased from time to time, in addition to which he was allowed 15 per cent of the net profits of the plaintiffs' District of Columbia Branch Office. At the time of his resignation, the defendant's weekly salary was $147, and with the percentage of profits, in the language of the defendant himself, he was "making close to $12,000 in the last two years." When he first tendered his resignation on October 1, 1953, the plaintiffs sought to induce him to withdraw it by increasing his compensation retroactive to January 4, 1953, as a result of which he was paid a sum of $836. Nevertheless, the defendant did terminate his employment at the time above stated.

It is not disputed that since the termination of defendant's employment, both individually and as a representative of the Allied Chemical Service, a corporation organized by his wife, his wife's mother, and a Washington accountant, who are the officers of said corporation, and having its place of business in Chevy Chase, Maryland, he has solicited former customers of the plaintiffs and secured contracts of service from them.

The sole defense and opposition to the temporary injunction is that the agreement not to solicit such customers is not enforceable in equity, because the contract of employment lacks such mutuality as would enable the defendant to enforce specific performance of obligations therein on the part of the plaintiffs. It is, therefore, urged by the defendant that the injunctive relief sought should not be granted, and the plaintiffs should be relegated to action at law for damages.

The authority principally relied upon by the defendant is the case of Byram v. Vaughn, 68 F.Supp. 981, decided by this Court. In that case a temporary injunction sought by the former employer against an employee, who had been discharged by the employer, to prevent the solicitation of patronage from the employer's customers was denied upon the ground that there was no obligation in the contract of employment for any stated or substantial period of employment. In that case, it is pointed out that this precise point does not appear to have been determined in any other reported case in the District of Columbia. There is, however, substantial authority supporting the right to equitable relief even in the absence of an obligation for a stated or substantial period of employment.[1]

1. Sherman v. Pfefferkorn, 241 Mass. 468, 135 N.E. 568.

It is well recognized in this jurisdiction,[2] as it is generally in other jurisdictions,[3] that, where a restrictive covenant of the kind here involved is reasonably limited as to time and territory, and is not such as to constitute an unfair restraint of trade contrary to public policy, or to work an unfair hardship upon the restricted party, it is a valid contractual obligation. Most certainly a court of equity should not permit its processes to be called into play to accomplish an inequitable result. Where the conduct of the parties is such that there is no clear occasion for the exercise of a court's power to prevent injustice and inequity, certainly those powers should not be exercised, and that is doubtless the occasion for the use in certain circumstances of the formula that equity will not intervene on behalf of one party when the contract is such that, under different circumstances, it would not have intervened in behalf of the other. I have no quarrel with that formula when applied in a situation where it is not clear that the power of the court should be exercised to prevent an inequity. I cannot accept it, however, where the actions of the parties have rendered it a meaningless verbal legalistic limitation on the right and duty of the court to prevent injustice and inequity. No authority with which I am familiar would intimate that, had the plaintiffs here agreed in the employment contract to employ the defendant for a period of five years at a salary of $80 a week, the plaintiffs would not now be entitled to the injunctive relief sought. When, in fact, the plaintiffs have employed the defendant for more than five years, and at a compensation far in excess of that which they agreed initially to pay him, and when his services were terminated, not by the plaintiffs, but against the plaintiffs' insistence that he remain at a further increase of compensation, how can it in good conscience be said that the plaintiffs, by doing more than they were required by law to promise, are precluded from having the defendant restrained from doing what was clearly contemplated that he should not do? If some neat verbal formula must be found to give legalistic dress to the exercise of a sound discretion by which every such case should be decided according to the equity of such case, doubtless it could be found in the fact of the acceptance by the defendant of the substantial increase in compensation after a period of five years' employment, constituting a reaffirmance and revivification of an obligation on his part, which in another view might have permitted the plaintiffs within a minute, or a day, or a week, to have terminated his employment.

Notwithstanding what I have said, I would not use the powers of this Court to restrain the defendant, even in these circumstances, if, by so doing, it would prevent him from engaging in a business in which he is trained and fitted to engage, or if it would permanently prevent him from engaging in such business with those persons who had been customers of his former employers; but that is not the case. The field in this territory is obviously not limited to those persons who are customers of the plaintiffs, many of whom were secured as customers by the defendant for the plaintiffs, and for which he was well and generously paid. He may without restraint engage in competition with the plaintiffs for services to all persons other than those, and even with respect to these persons after the period during which he has agreed not to do so. It is not the purpose of injunctive relief to prevent competition of the defendant with the plaintiffs. Its purpose is to preserve to the plaintiffs the fruits of the defendant's services, for which he was paid as an employee of the plaintiffs.

For the reasons stated, a temporary injunction as sought by the plaintiffs will be granted.

2. Godfrey v. Roessle, 5 U.S.App.D.C. 299, Erikson v. Hawley, 56 U.S.App.D.C. 268, 12 F.2d 491, Allison v. Seigle, 65 U.S. App.D.C. 45, 79 F.2d 170.

3. Annotations: 9 A.L.R. 1480, 20 A.L.R. 869, 67 A.L.R. 1010, 98 A.L.R. 987.