BORDEN, INC. *v.* William Clay SMITH et al

5-5846                                                    478 S.W. 2d 744

Opinion delivered April 10, 1972

*Eichenbaum, Scott & Miller* and *Walker, Campbell & McCorkindale,* for appellant.

*Fitton, Meadows & Adams,* for appellees.

CARLETON HARRIS, Chief Justice. William Clay Smith, appellee herein, executed contracts of employment with appellant's predecessor organization and with appellant, Borden, Inc., the last such contract being entered into on January 25, 1969. This last agreement restricted Smith, for the period of one year, from competing with appellant, who sold frozen and non-frozen foods, within the latter's trade area, described as being sixty-three counties in Arkansas, two counties in both Missouri and Oklahoma, and one county in Texas.[1] After Smith left appellant's employment, and went to work for appellee company, Borden instituted suit to enforce the agreement. On trial, the court held that "there were no trade secrets involved and that the territory embraced in the restriction is unreasonably large and would unreasonably interfere with appellee's right and necessity to earn a living; that the restrictive clause of the contract in this instance constitutes an unreasonable restraint of trade and as such in invalid and unenforceable". From the decree dismissing such complaint for want of equity, appellant brings this appeal. It is asserted that the court erred in finding the contract to be invalid and unenforceable.

The proof reflects that the company has two sales districts, consisting of a northen district and a southern district, with eleven salesmen in each of the two districts and a sales supervisor for each of the districts. The salesmen are employed entirely on a commission basis, being paid no salary except during a training period of a few weeks. Sam Vogel General Manager, said that

[1] The court's decree found that the trade territory was fifty-nine counties in Arkansas, and two counties in each of the states of Texas, Oklahoma, and Missouri. This enumeration appears correct under a 1963 contract, but does not coincide with the provisions of the last contract. Sam Vogel, President and General Manager, and founder of Vogel's Inc., (owned by Bordens, Inc., the sole stockholder) listed a territory different in some respects from either. He testified that appellant's territory was "All of Arkansas except eleven counties in Eastern Arkansas***, three or four counties in Missouri***two counties in Oklahoma, and***one county in Texas". These small differences in area however are not significant.

Smith, and other salesmen in the northern district, would receive a route schedule for their area, but that they were also familiar with the territory schedule for the southern district because both schedules were posted in sales meetings which were held every three weeks. The witness stated that any salesman would have knowledge of the entire company operation as to routes, workdays, and delivery days. Vogel said that if a competitor knew the days on which Borden's sales people would be working, it would be easy to work ahead of those salesmen and obtain orders. He stated that the schedules even reached an hourly basis, and if a competitor learned that one of appellant's salesmen would call on a certain customer at 11:00 o'clock, such competitor would be in a position to call on the prospect at 10:00 o'clock and thus have first opportunity to obtain the business of that customer. "Well, the same thing is true with the truck deliveries, if our trucks are scheduled to deliver on Monday from working on a Friday or a Sunday evening by phone, it would be logical that a competitor company working on Thursday and delivering on Friday precludes us from getting the just amount of business that we desire from that particular area." Vogel said that the company changed these schedules only about once a year, changes being costly because 22 salesmen's routes had to be coordinated as well as 14 trucks. The witness testified that there was a great advantage in knowing the schedule of competitors, but that such information was difficult to obtain.

"Well, it would be very difficult. I have been in the business twenty-five (25) years now and still am curious about how most all of my competitors operate. I have in the past had my district managers follow competitors' trucks to see what they were selling and what they were delivering and after maybe two or three hours over the territory they would lose the driver and would actually waste a day then trying to track them down, and really that is not a satisfactory method. There really is no way in the world I can obtain the knowledge that I need, other than through hiring a competitor's salesman."

Smith voluntarily quit his employment when his territory was changed in April, 1971, and between two

and three weeks later was employed by Lady Baltimore Foods, Inc., a competitor of Borden.[2] Of course, the contention is that Lady Baltimore has taken advantage of the knowledge given by Smith while an employee of appellant, to enhance its competitive position.[3]

Appellant insists that Smith had access, through the aforementioned sales meetings and schedules, to "trade secrets", and that the contract entered into was valid as a protection of those trade secrets. We cannot agree that the information mentioned constitutes "trade secrets". Actually, only appellant's manner of doing business was learned by appellee Smith, which is very similar to the situation in *Miller* v. *Fairfield Bay*, 247 Ark. 565, 446 S. W. 2d 600, where it was contended that a former employee, who subsequently went to work for a competitor, had learned the advertising schedule and the routes of incoming customers, and thus should have a restrictive contract enforced against him. We did not agree with the contention and pointed out that the case was entirely different from *Orkin Exterminating Co.* v. *Murrell*, 212 Ark. 449, 206 S.W. 2d, 185, that case being relied upon in *Miller* as well as in the case before us. This court said, referring to *Orkin*:

> "In that case, trade secrets were involved, the company maintaining a research department, wherein the nature and habits of insects and rodents were ascertained, and chemicals and compounds were prepared to be used in the destruction of these pests without danger to human beings or damage to furniture or woodwork. Chemicals were mixed and formula reported. Those circumstances were, of course, vastly different from the circumstances in the case before us."

[2]Appellee company was not completely in competition with appellant, since appellee only sells to institutions while appellant sells to both institutions and retailers.

[3]David Edward Kampschroeder, of Springfield, Missouri, Branch Manager of the Springfield division of Lady Baltimore, testified that even if Smith had delivered schedules and information to the company, it would have been of no benefit since his company did not maintain route schedules and delivery schedules in the manner testified to by Vogel. He insisted that he hired William Clay Smith and not whatever records he might have.

This language is entirely *apropos* to the instant litigation. It is true that business information was divulged at these sales meetings which would not be passed out as general information to the public, but this is probably true in every type of business, vocation, or profession, and certainly, anyone engaged in selling frozen or non-frozen foods would know the institutions that use such products. Nor are we impressed by the argument that Lady Baltimore's salesmen could learn the hours that customers were called upon by salesmen of appellant company by virtue of the schedules heretofore mentioned. It would appear that this information could be obtained without having access to confidential records. Actually, the principal injury in this type of case comes from the good will that a particular salesman builds with customers, those customers continuing to give him orders, even though he is employed by another company, i.e., they purchase from the salesman rather than from the company. So—we hold that no trade secrets are involved in this litigation, and the agreement must be passed upon in that light.

As previously stated, the contract prohibits Smith from competing with Borden within appellant's trade area, which the court found to be fifty-nine counties in this state, and two counties in each of the states of Texas, Oklahoma, and Missouri. The present territory of Smith only includes three counties in this state, two of which he worked as an employee of appellant. [4] Yet he is barred, under the agreement, from working in nearly four-fifths of the state. Without any hesitation whatsoever, we find that this restricted area is much too broad for this type of business and we accordingly hold the restraint void as an unreasonable restraint on trade. This holding makes it unnecessary to discuss the time limitation in the contract.

Appellant recognizes that we have held that the contract must be valid as written, and we will not apportion or enforce such a contract to the extent that we might consider it reasonable. See *McLeod* v. *Meyer*, 237 Ark.

---

[4] At the time appellee left Borden, he was working in Boone, Searcy, Newton, and Marion counties in Arkansas, and Taney county in Missouri.

300

173, 372 S.W. 2d 220. There, we stated that we would not vary the terms of a written agreement between the parties; to do so would mean that we were making a new contract and we have consistently held that this will not be done. Appellant urges that we reconsider this holding in line with the recent Iowa case of *Ehlers* v. *Iowa Warehouse Company*, 188 NW 2d 368, and the New Jersey case of *Solari Industries Inc.* v. *Malady*, 264 A 2d 53, but we decline to do so.

Affirmed.