Frederick A. ALDERS, Plaintiff,

v.

**AFA CORPORATION OF FLORIDA,**
Defendant.

Civ. No. 72–933.

United States District Court,
S. D. Florida.

Jan. 22, 1973.

Edward C. Vining, Jr., and R. M. MacArthur, Miami, Fla., for plaintiff.

William B. Killian, Miami, Fla., for defendant.

## MEMORANDUM OPINION

ATKINS, District Judge.

This cause came before the Court for a non-jury trial upon Plaintiff's complaint and Defendant's counterclaim, both seeking a determination as to the validity, under the Sherman Antitrust Act, of a covenant not to compete in an employment agreement entered into between the Defendant and the Plaintiff. Plaintiff seeks a declaratory judgment that the provision is invalid and unenforceable and an injunction against its enforcement. The counterclaimant prays that the Plaintiff be enjoined from violating the covenant not to compete. Both parties have abandoned their damage claims. The Court has carefully considered the evidence adduced and the memoranda submitted.

Jurisdiction of the cause is based upon 28 U.S.C. §§ 1331 and 1337. The relief sought is authorized by 28 U.S.C. § 2201. A genuine dispute exists as to the rights and obligations of the parties under the covenant not to compete.

The Defendant, AFA Corporation of Florida, is a corporation engaged in the manufacture and distribution of liquid spray devices, particularly its trigger sprayers and other manually operated spray devices, and electric foggers. Plaintiff Frederick A. Alders and his father, now deceased, were the sole owners of AFA. During his father's illness, the Plaintiff became president of AFA.

Beginning in 1963, AFA's performance attracted overtures from acquisition-minded companies. The ensuing negotiations are detailed in the amendment to the Pretrial Stipulation. They culminated in the purchase of AFA by Thiokol Chemical Corporation, evidenced by the March 30, 1967, stock purchase agreement. In the stock-for-stock transaction, Plaintiff surrendered his five shares of AFA and the fifteen shares held by his father's estate (with Plaintiff as the executor and sole beneficiary of the estate) in exchange for approximately one hundred fifty thousand (150,000) shares of Thiokol stock.

AFA was sold as a going business. The price was fixed at ten times AFA's earnings. The amount of Thiokol stock to be acquired by Plaintiff was determined by reference to the value of Thiokol stock over a given thirty day trading period. Thiokol paid AFA's "asking price" and, in effect, paid Plaintiff Thiokol stock worth over $2.8 million for the ongoing business of AFA.

On the same day the sale of AFA was consummated, Plaintiff and Defendant entered into the employment agreement (Plaintiff Exhibit 1) which is the subject of this litigation. AFA agreed therein to employ the Plaintiff as its president for a period of five years at an annual salary of $50,000, plus fringe benefits and bonuses. Paragraph 8, the no-compete provision, reads as follows:

> ALDERS will not, during the five (5) year period following termination or expiration of this Agreement, act as an officer, director, employee, agent, sole proprietor, partner, or consultant of, or otherwise participate in, any enterprise or organization in the United States, its territories and possessions, Mexico, or Canada, which is engaged,

or is actively preparing to engage, in the business of manufacturing and selling liquid spray devices or other products which AFA, or any subsidiary thereof was manufacturing or selling during or prior to ALDERS' employment with AFA or any subsidiary thereof or any other business competitive with that of AFA or any subsidiary thereof where the activities of ALDERS with such enterprise or organization during such period would include services in such field.

The continued employment of Alders as President of AFA was an important part of the Thiokol purchase. Thiokol was interested in retaining the AFA management team. Three other key AFA employees were induced to stay on, although their employment agreements also contained no-compete clauses.

Plaintiff testified that he was unaware of the covenant until the signing of the employment agreement at the closing in New York. Despite his surprise, he signed the agreement and abided by its terms. At the expiration of the five year period, on March 29, 1972, Plaintiff resigned. On June 15, 1972, this suit was instituted.

■ The defense that the Plaintiff is *in pari delicto* with the Defendant concerning any antitrust violations in the covenant not to compete must be rejected. This defense is disfavored in private antitrust actions. Perma Life Mufflers, Inc. v. International Parts Corp., 392 U.S. 134, 88 S.Ct. 1981, 20 L.Ed. 982 (1968). It is inapplicable here, where the Plaintiff had no role in the drafting of the challenged covenant. *Accord,* Blake, Employee Agreements Not to Compete, 73 Harv.L.Rev. 625, 628, n.8 (1960).

It is clear from the context of the negotiations that the restraint on the Plaintiff must be judged as an ancillary restraint—ancillary to the sale of AFA. Thiokol sought to acquire the business known as AFA Corporation of Florida. To help it realize the full potential of that business, it retained the services of several AFA employees. The no-compete clause was routinely included in the employment agreements. Raymond Weise, a Thiokol executive who negotiated with the Plaintiff, testified that the Defendant always included a similar covenant in employment agreements entered into as part of an acquisition.

■■ The Plaintiff argues that, because the covenant not to compete on its face restrains him from competing with AFA, it is a contract in restraint of trade, and constitutes a per se violation of the Sherman Act, Section 1. This argument is totally without merit. Ever since the decision in United States v. Addyston Pipe & Steel Co., 85 F. 271 (6th Cir. 1898), modified, 175 U.S. 211, 20 S.Ct. 96, 44 L.Ed. 136 (1899), it has been recognized that the validity of covenants not to compete turns upon the reasonableness of the restraint in each case. *See, e. g.,* Snap-On Tools Corporation v. F. T. C., 321 F.2d 825, 837 (7th Cir. 1963); Graham v. Hudgins, Thompson, Ball and Associates, Inc., 319 F.Supp. 1335, 1337 (N.D.Okl.1970). By adopting this reasonableness test, the court in *Addyston Pipe* anticipated the subsequent adoption of the rule of reason for most non-ancillary as well as ancillary restraints in Standard Oil Co. v. United States, 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619 (1911).

Judge Taft stated at length the justification for what he termed "covenants in partial restraint of trade":

> After a time it became apparent to the people and the courts that it was in the interest of trade that certain covenants in restraint of trade should be enforced. It was of importance, as an incentive to industry and honest dealing in trade, that, after a man had built up a business with an extensive good will, he should be able to sell his business and good will to the best advantage, and he could not do so unless he could bind himself by an enforceable contract not to engage in the same business in such a way as to prevent injury to that which he was about to sell.

United States v. Addyston Pipe & Steel Co., *supra*, at 280.

Another commentator more recently described the justification for covenants not to compete as follows:

A transfer of good will cannot be effectively accomplished without an enforceable agreement by the transferor not to act so as unreasonably to diminish the value of that which he is selling.

Blake, Employee Agreements Not to Compete, 73 Harv.L.Rev. 625, 646 (1960).

Judge Taft opted, in formulating a test by which the reasonableness and validity of such a restraint could be judged, to follow the common law. A covenant not to compete was therefore to be held valid only to the extent that it was necessary to protect the purchaser in his enjoyment of the fruits of his purchase.[1] As the law has developed, this means that the covenant must be no broader than necessary as to time, territory, and product line.[2]

The facts bearing upon the reasonableness of the covenant in this case can be stated briefly. Plaintiff is, in essence, restricted from competing with AFA for five years in the United States, its possessions, Mexico, and Canada. This restriction applies, as the Court and the Defendant interpret it, to products manufactured or sold by AFA prior to or during Plaintiff's employment with it and products in competition with those of AFA at that time.

Woefully little evidence was presented as to the territorial scope of AFA's operations. AFA sold its products through a system of distributor accounts and house accounts. The latter, serviced directly by the Defendant, accounted for 50 to 55 percent of AFA's sales. Distributors serviced the United States and Canada, as of 1967, from 65 to 80 major cities. AFA now has ten to fifteen additional distributors. AFA also served house accounts in the United States and Mexico. Distributors sold AFA products in France, Germany, England, Italy (Plaintiff described it as "all non-Communist" European countries), Japan, Australia, the Far East, and South America (Brazil, Argentina, and Columbia). Thus, there are vast areas not covered by the non-competition covenant in which Plaintiff admittedly could compete directly with AFA.

Although AFA no longer has Mexican house accounts, its gross sales have increased from $3 million in 1966 to approximately $6 million in 1972. Despite this impressive growth, however, the Defendant's share of the tremendous consumer market for liquid spray devices is characterized as minimal. There are an increasing number of competitors in the field.

Mr. Alders, of course, has an unparalleled familiarity with AFA's operations. As vice-president and president, he directed AFA's marketing effort, specializing in sales and advertising. He knows the company's products and customers. Under all the facts presented, the restraint appears to be no broader than is necessary to protect the good will purchased by Thiokol.

Whether this be viewed as simply a suit to declare a contract invalid or an antitrust action, the Plaintiff bears the burden of proving illegality. Palmer v. Chamberlin, 191 F.2d 532, 539 (5th Cir. 1951); Associated Press v. Taft-Ingalls Corporation, 340 F.2d 753, 759 (6th Cir.), cert. denied, 382 U.S. 820, 86 S.Ct. 47, 15 L.Ed.2d 66 (1965); Denver Petroleum Corporation v. Shell Oil Co., 306 F.Supp. 289, 300 (D.Colo.1969). Plaintiff has not carried this burden in

---

1. *Accord*, 2 Restatement of the Law, Contracts § 515(a) (1933).

2. Although it seems clear that federal law, rather than Florida law, applies, since this is a federal question case with no diversity jurisdiction asserted, the question is of mainly academic interest. The applicable state law, contained in F.S.A. § 542.12(2) (1972), is similar, permitting a restraint on "engaging in a similar business . . . within a reasonably limited time and area."

the case *sub judice*. The evidence, largely the testimony of Mr. Alders himself, is consonant with the hypothesis that AFA, in 1967, carried on a substantial trade in all areas encompassed by the covenant, as well as numerous foreign countries. Assuming arguendo that AFA did not sell in a given state, evidence of that fact would certainly have been relevant and admissible. No such evidence, and no sales data, were adduced.

The restraint in question is obviously quite broad geographically. The only suggestion that it might be· unduly broad, however, arises from the testimony that AFA, in 1967, lost its house accounts in Mexico and thus no longer markets its products there. The evidence does not reflect the date of these Mexican legal developments in relation to the March 30, 1967 covenant not to compete. Plaintiff has therefore not carried the burden of showing unreasonableness in this respect.

 Parenthetically it should be noted that, even if the evidence showed that AFA no longer serviced its former Mexican accounts on March 30, the Court would declare the covenant valid and enforceable except insofar as it restrains Mr. Alders from competing in Mexico. The law on the question of rewriting a covenant not to compete to excise overbroad restrictions is still developing. Professor Blake, in his illuminating discussion of the subject, suggests that the court, as a general rule, should not rewrite such contracts, since this would encourage employers or purchasers to impose egregious restraints on their employees or sellers for their in terrorem effect, secure in the knowledge that, if challenged, the covenants would be construed by a court to include only the lawful area of restraint. He does, however, believe that a "blue pencil" may be wielded by a court where the covenant is

drafted carefully and in good faith, and is tailored to the facts concerning the business and the individual employee. Blake, *supra*, 73 Harv.L.Rev. at 681–84.[3] This case fits that description. There was no evidence of any attempt by Thiokol to overreach the Plaintiff. Mexico was included in the agreement in good faith, although AFA does not now sell its products there. There has, in this case, been proof that AFA's sales area, as of March 30, 1967, equalled Plaintiff's area of marketing activity, which in turn equalled the geographical scope of the restraint imposed by the covenant not to compete.

This Court's view of the reasonableness of the covenant is supported by the case law. In Tri-Continental Financial Corp. v. Tropical Marine Enterprises, Inc., 265 F.2d 619 (5th Cir. 1959), aff'g 164 F.Supp. 1 (S.D.Fla.1958), a covenant prohibiting the buyer of a vessel from operating the boat for ten years as a ferry between ports in specified Southern states and Cuba was upheld against antitrust challenge. *Accord*, Cincinnati, Portsmouth, Big Sandy and Pomeroy Packet Co. v. Bay, 200 U.S. 179, 26 S.Ct. 208, 50 L.Ed. 428 (1906) (upholding five year covenant ancillary to the sale of certain vessels). The Fifth Circuit in Day Companies, Inc. v. Patat, 403 F.2d 792 (5th Cir. 1968), cert. denied, 393 U.S. 1117, 89 S.Ct. 993, 22 L.Ed. 122 (1969), upheld a five year covenant not to compete, effective upon termination of employment, which was entered into by John Farris at the time of the sale of his business. Farris, the president and major stockholder of Farris Plywood Corporation, had agreed not to engage for five years "in any business or employment which shall be in competition with Farris in the area presently operated in by Farris." The Georgia law applied by the court set standards identical to those applicable in

---

3. Florida courts, in interpreting the Florida statute, have permitted enforcement of the covenant in a "lesser included area," where it was unreasonably broad, without requiring a showing of good

faith. *See, e. g.,* Kofoed Public Relations Associates, Inc. v. Mullins, 257 So.2d 603 (Fla.App.1972), cert. denied, 263 So. 2d 230 (Fla.1972).

this case. A ten year restraint on the principal of an acquired competitor was approved and enforced in Rinker Materials Corp. v. Holloway Material Corp., 167 So.2d 875 (Fla.App.1964), cert. denied, 173 So.2d 145 (Fla.1965).

Plaintiff's contention that the covenant in this case signifies monopolization of the liquid spray device field, or an attempt to monopolize, is equally without merit or support in the record. Competition in this industry is intense and AFA's market share is small. Although there are cases in which the securing of such covenants has been considered as evidence of monopolization, this is hardly such a case. In United States v. Eastman Kodak Co., 226 F. 62 (W.D.N.Y.1915), appeal dismissed, 255 U.S. 578, 41 S.Ct. 321, 65 L.Ed. 795 (1921), the defendant had, as part of the acquisition of some twenty competitors, obtained covenants prohibiting competition from officers of the acquired companies for as long as twenty years. The court felt that:

> the sales restrictions, together with the raw paper contracts, the acquisition of plants and properties, stockhouses, etc., and the covenants against producing photographic materials, indicate an intention to supplant competitors and to unduly and unreasonably restrain and monopolize interstate trade in photographic supplies.

*Id.* at 77.

There is no evidence of any monopolization or predatory intent on the part of Thiokol. Before the acquisition of AFA, Thiokol had never engaged in the liquid spray device field. Since that time, Thiokol has made no additional acquisitions in the industry. The acquisition of AFA thus effected a product extension merger rather than acquisition of a competitor. No elimination of competition occurred in 1967. The only restraint arose in 1972 upon termination of the Plaintiff's employment with AFA. That ancillary restraint has met the standards of the Sherman Act.

Accordingly, in light of the abundant evidence that the restraint on the Plaintiff is reasonable and not violative of either § 1 or § 2 of the Sherman Act, it is the opinion of the Court that the covenant not to compete is valid and enforceable. A declaratory judgment to that effect will be entered.

It is clear that the Plaintiff has not violated the covenant which restrains him. His good faith is evidenced by the filing of this declaratory judgment action prior to any other action on his part. There is nothing to suggest to the Court that he will not abide by this ruling. Therefore, injunctive relief will not be entered. Should a concrete factual instance of violation of the covenant arise, the Court will entertain a petition to reopen this case and consider the need for an injunction.

This opinion contains the Court's findings of fact and conclusions of law pursuant to Rule 52(a), F.R.Civ.P.