**Donald B. ELLIS, Appellant,**

v.

**JAMES V. HURSON ASSOCIATES, INC., Appellee.**

**No. 88–1240.**

District of Columbia Court of Appeals.

Argued March 17, 1989.
Decided Oct. 25, 1989.

Keith J. Harrison, with whom Robert G. Hibbert was on the brief, for appellant.

James R. Schroll, with whom Edward Varrone was on the brief, for appellee.

Before ROGERS, Chief Judge, STEADMAN, Associate Judge, and MACK,* Associate Judge, Retired.

STEADMAN, Associate Judge:

On January 22, 1988, after more than ten years of employment, appellant Donald B. Ellis resigned his position with appellee James V. Hurson Associates, Inc. ("Hur-

* Judge Mack was an Associate Judge of this court at the time of argument. Her status changed to Associate Judge, Retired, on October 1, 1989.

son") and immediately began to compete with Hurson. In particular, he began, sometimes successfully, to woo away Hurson's clients for his own. Hurson brought suit against Ellis, alleging that Ellis was in breach of a covenant relating to postemployment competition signed by Ellis three weeks after starting employment with Hurson. Ellis appeals from the trial court's entry of a preliminary injunction enjoining him from "soliciting or providing services to any clients that were formerly clients of Hurson and Associates before Mr. Ellis resigned from Hurson and Associates on January 22, 1988."

Although the subject of contractual restraints on postemployment competition has generated a sizeable volume of judicial opinions and academic commentary generally, *see, e.g.,* 14 WILLISTON, CONTRACTS § 1643 (3d ed.1972); 6A CORBIN, CONTRACTS § 1394 (1962 and Supp.1989), this is the first case on the subject presented to this court.[1] We remand the case for further consideration in light of this opinion.

## I.

The threshold inquiry is to determine precisely what "covenant" is at issue. The covenant not to compete read in full as follows:

> In consideration of the employment by, and salary to be paid by, James V. Hurson Enterprises (the company) of the employee signing below, it is agreed that if the employee's employment terminates for any reason whatsoever, voluntary or involuntary, the employee will not, direct-

ly or indirectly, enter into or engage in business competition with the company, nor attempt to secure the company's clients or customers by direct or indirect means, nor aid any competing individual, firm or organization in any way including but not limited to the divulging of the identity of clients or customers of the company, nor divulge or use the trade practices or secrets used by the company for a period of three years after employment. The foregoing prohibitions shall also apply during the period of employment. If the employee shall violate the agreement, the company shall be entitled to an injunction, to be issued by any competent court of equity enjoining and restraining the employee, and each and every other person concerned therein, from violating or assisting in the violation of this agreement.

However, the preliminary injunction purported to enforce only one portion of the covenant; viz., that the employee will not attempt to secure the company's clients or customers by direct or indirect means.[2] Ellis urges us to view the covenant in its entirety, taking the position that if the entire covenant is not enforceable, no portion thereof is enforceable. (Much of his brief is accordingly directed to an attack on the broad covenant not to compete.) We disagree.

Although there are a few jurisdictions which adhere to the view that covenants in restraint of trade ("restraining covenants") which are not enforceable in full are wholly unenforceable,[3] the vast majority enforce

---

**1.** Indeed, there is little binding precedent in our jurisprudence dealing with covenants not to compete, only a 1926 opinion, *Erikson v. Hawley,* 56 App.D.C. 268, 12 F.2d 491 (1926), a two-paragraph per curiam affirmance of a district court permanent injunction on the basis of the district court's opinion granting a temporary injunction, *Wineburgh v. Meyer,* 95 U.S.App.D.C. 262, 221 F.2d 543 (1955) (approving *Meyer v. Wineburgh,* 110 F.Supp. 957 (1953)) and *Chemical Fireproofing Corp. v. Krouse,* 81 U.S.App.D.C. 145, 155 F.2d 422 (1946). All of these decisions are in essential harmony with the Restatement formulation we adopt today. *See M.A.P. v. Ryan,* 285 A.2d 310 (D.C.1971). Another possible source of postemployment restraints may arise from tortious principles of unfair competition. *See, e.g., Ruesch v. Ruesch International*

*Monetary Services, Inc.,* 479 A.2d 295 (D.C.1984) (particular customer list held not entitled to protection as trade secret).

**2.** At the hearing on Hurson's motion for a preliminary injunction, counsel stated to the court, "I would like to indicate that what we're seeking here, Your Honor, is merely an injunction to prevent Mr. Ellis from soliciting Hurson's customers. We're going to be content with an injunction that does that. We're not trying to put him completely out of business."

**3.** *See, e.g.,* two Arkansas cases, *Borden, Inc. v. Smith,* 252 Ark. 295, 478 S.W.2d 744, 747 (1972), and *Rector–Philips–Morse, Inc. v. Vroman,* 253 Ark. 750, 489 S.W.2d 1 (1973); and two Georgia

such covenants to the extent their terms are reasonable [4] (a point to be dealt with more fully *infra* ). Some of these jurisdictions follow the "blue pencil rule," and hold that restraining covenants may be enforced in part, but only where the part enforced is divisible, that is, where the severable character of the restriction is evident from the terms of the agreement.[5] Other of these jurisdictions partially enforce restraining covenants without engaging in an analysis of whether the covenant's terms appear strictly "severable." [6] None of the restraining covenant cases applying District of Columbia law have confronted whether and under what circumstances a court may selectively enforce portions of such a covenant.

In keeping with the great weight of modern authority,[7] we join those jurisdictions which have rejected the view that covenants not to compete must be enforceable in whole or not at all. *See, e.g., Ehlers v. Iowa Warehouse Co.*, 188 N.W.2d 368 (Iowa 1971) (explaining why "logic, equity and the modern authorities" persuaded the court to overrule itself and adopt a rule favoring partial enforcement of restraining covenants). While we are cognizant of the judicial reluctance to "rewrite" contracts between parties, *see, e.g., Rector–Phillips–Morse, Inc. v. Vroman*, 253 Ark. 750, 489

S.W.2d 1 (1973), and the argument which suggests that partial enforcement rewards employers who have everything to gain from writing overbroad covenants,[8] these concerns need not be compromised by the rule we adopt today in light of the limitations on its application.

■ The Restatement sets forth the relevant principles. Where less than all of an agreement is unenforceable on public policy grounds, a court may nevertheless enforce the rest of the agreement "in favor of a party who did not engage in serious misconduct." RESTATEMENT (SECOND) OF CONTRACTS § 184(1) (1981). Furthermore, a court may treat only part of a term as unenforceable under this rule "if the party who seeks to enforce the term obtained it in good faith and in accordance with reasonable standards of fair dealing." *Id.* at § 184(2).[9] *See, e.g., Ehlers, supra,* 188 N.W.2d at 370; 14 WILLISTON, CONTRACTS § 1647c (3d ed.1972) (problem of employer overreaching "can be avoided in part at least by the adoption of the rule ... which completely invalidates covenants deliberately unreasonable and oppressive whether severable or not").

Since the terms of the restraining covenant at issue here are in the main severable on their face, we need not in this prelimi-

cases, *Richard P. Rita Personnel Service Int'l, Inc. v. Kot*, 229 Ga. 314, 191 S.E.2d 79 (1972), and *Purcell v. Joyner*, 231 Ga. 85, 200 S.E.2d 363 (1973).

4. *See generally* Annotation, *Enforceability of Contract not to Compete*, 61 A.L.R. 3d 397 (1975) (discussing cases).

5. *See, e.g., Alders v. AFA Corp. of Florida*, 353 F.Supp. 654 (S.D.Fla.), *aff'd*, 490 F.2d 990 (5th Cir.1974); *Burroughs Corp. v. Cimakasky*, 346 F.Supp. 1398 (E.D.Pa.1972); *Lassen v. Benton*, 87 Ariz. 72, 347 P.2d 1012 (1959).

6. *See, e.g., John Roane, Inc. v. Tweed*, 33 Del.Ch. 4, 89 A.2d 548 (1952) (applying Maryland law); *Insurance Center, Inc. v. Taylor*, 94 Idaho 896, 499 P.2d 1252 (1972); *Solari Indus., Inc. v. Malady*, 55 N.J. 571, 264 A.2d 53 (1970); *Sidco Paper Co. v. Aaron*, 465 Pa. 586, 351 A.2d 250 (1976); *Wood v. May*, 73 Wash.2d 307, 438 P.2d 587 (1968).

7. *See, e.g.,* Annotation, *supra* note 4, 61 A.L.R.3d 397; CALAMARI & PERILLO, THE LAW OF CONTRACTS

§ 61–21 (1977) (partial enforcement approach "represents the weight of modern authority"). *Cf. Erikson v. Hawley, supra* note 1, 56 App.D.C. at 271, 12 F.2d at 494: "After a party has deliberately made his contract, and received the consideration therefor, it must plainly appear that it contravenes public policy before the courts will declare it void upon that ground" (quoting from *Godfrey v. Roessle*, 5 App.D.C. 299 (1895)).

8. *See, e.g., Alders, supra* note 5, 353 F.Supp. at 658 (noting commentary that as a general rule courts should not rewrite restraining covenants, "since this would encourage employers or purchasers to impose egregious restraints on their employees or sellers for their in terrorem effect...."); *Baker v. Starkey*, 259 Iowa 480, 144 N.W.2d 889, 898 (1966) (partial enforcement rule would in many cases afford employers an "unconscionable advantage" over their employees).

9. On remand, the trial court should address the possible applicability of this principle.

nary injunction appeal decide whether or not to adopt a "blue pencil" rule in this jurisdiction. Whether under that approach or one which would enforce a restraining covenant to the extent that its terms are reasonable, regardless of grammatical severability, we hold that the trial court committed no abuse of discretion by entering a preliminary injunction which did not purport to enforce *in toto* the covenant which formed the basis of the action.

Accordingly, the considerably more narrow issue before us is whether there is a substantial likelihood that a covenant not to solicit the company's clients or customers [10] for a period of three years will be found to be valid and binding upon Ellis.[11]

### II.

■ Nevertheless, even in a more restricted form, we deal here with a form of restraint of trade, to which applies one of the common law's "oldest and best established" public policy concerns. RESTATEMENT (SECOND) OF CONTRACTS, Introductory Note to Topic 2: Restraint of Trade (1981). This Restatement in its sections 186–188 sets forth in lucid form a codification and explanation of the applicable common law principles as distilled from the case law of the nation.[12] In the absence of any current well-developed doctrine in our jurisdiction, we adopt this modern and authoritative exposition insofar as it applies to the case before us.

Section 186 sets forth the basic principle. "A promise is unenforceable on grounds of public policy if it is unreasonably in restraint of trade. A promise is in restraint of trade if its performance would ... restrict the promisor in the exercise of a gainful occupation." Section 188 amplifies this doctrine in the context of a promise of the type Ellis made, that is, a promise that imposes a restraint that is ancillary to an otherwise valid transaction. RESTATEMENT, *supra* at § 188(2)(b). Such promises are "unreasonably in restraint of trade" if:

> (a) the restraint is greater than is needed to protect the promisee's legitimate interest, or
>
> (b) the promisee's need is outweighed by the hardship to the promisor and the likely injury to the public.

Comment g to section 188 focuses in particular on postemployment restrictions. It observes that such restrictions are usually defended on the ground that the employee has acquired either confidential trade infor-

---

**10.** In the interests of exactitude, the class of Hurson clients affected by the injunction.

**11.** In determining whether to issue a preliminary injunction, the trial court must consider whether the moving party has shown: 1) that there is a substantial likelihood of prevailing on the merits; 2) that there exists a danger of suffering irreparable harm during the pendency of the action; 3) that more harm will result from the denial of the injunction than will result to the defendant from its grant; and in appropriate cases, 4) that the public interest will not be disserved by the issuance of the order. *Don't Tear It Down, Inc. v. District of Columbia,* 395 A.2d 388, 390 (D.C.1979) (citation omitted). Ellis's argument before us concentrates on the first of these requirements. On remand, all should be reconsidered in light of this opinion, including the fourth requirement. As discussed *infra,* the issue is entwined with considerations of public policy. See also note 13 *infra.*

**12.** "The one type of promise in restraint of trade that has traditionally been left to be dealt with under judicially developed rules [is] the promise to refrain from competition." RESTATEMENT, *supra,* Introductory Note to Topic 2. The District,

like virtually every state, has enacted a statutory prohibition against restraint of trade, D.C.Code § 28–4502 (1981), which provides in full that "[e]very contract, combination in the form of a trust or otherwise, or conspiracy in restraint of trade or commerce all or any part of which is within the District of Columbia is declared to be illegal." The legislative history of the District of Columbia Antitrust Act of 1980, of which § 28–4502 is a part, states that the Act is "[i]n the tradition of English common law and federal antitrust statutes, ... designed to foster innovation and independence in the local business sector by outlawing *unreasonable* restraints of trade and monopolistic acts." (Emphasis added.) Committee on the Judiciary, Report on the District of Columbia Antitrust Act, Bill 3–107, at 1 (1980). Similarly, 17 AM.JUR.2D *Monopolies, Restraints of Trade, and Unfair Trade Practices* § 457 (1971) states that "[i]f the term 'restraint of trade' is not defined by a state antitrust statute which prohibits restraints of trade, the statute outlaws only those restraints of trade which were invalid at common law. The rule of reason applies in construing state antitrust statutes—that is, conduct is forbidden by the statute only when the restraint is unreasonable."

mation (not an element here) or "the means to attract customers away from the employer." It then observes that "whether the risk that the employee may do injury to the employer is sufficient to justify a promise to refrain from competition after the termination of the employment will depend on the facts of the particular case." Thus, it explains, "if the employer seeks to justify the restraint on the ground of the employee's ability to attract customers, the nature, extent and locale of the employee's contacts with customers are relevant. A restraint is easier to justify ... if the restraint is limited to the taking of his former employer's customers as contrasted with competition in general." *Id.*

While the trial court heard testimony regarding Ellis's client contacts while employed at Hurson, it understandably did not engage in any explicit exploration of the question of enforceability in light of the above-stated Restatement principles. Indeed, the varying language utilized in successive versions of the protective order evidences a lack of precise focus. The original order, dated July 19, 1988, stated that Ellis was "prohibited from soliciting any of plaintiff's present client or clients defendants came to know of by virtue of his employment with plaintiff." In response to a motion of Hurson, in an August 18, 1988, order the trial court added a prohibition against "providing services," so as to reach former clients of Hurson whom Ellis had improperly solicited away. Moreover, although neither party had so requested, the trial court amended the language dealing with the clients covered by the order, so that it affected "any clients that were formerly clients of Hurson and Associates before Mr. Ellis resigned from Hurson and Associates."

The original form of the order broadly encompasses all present clients, even those who became such after Ellis's departure.

Likewise, the revised version in one possible reading could sweepingly encompass all prior Hurson clients, applying not only to the approximately 600 companies who were clients at the time Ellis resigned, but also to the 12,000 companies claimed to have been clients of Hurson's at anytime in the past.[13] Indeed, an even further restriction in the scope of the injunction, such as to those clients actually served by Ellis while with Hurson, may be indicated in applying to this particular situation the limitations, discussed above, of Restatement section 188. See, e.g., the cases cited at footnote 16, *infra.*

So as to give the trial court an opportunity to consider the question of preliminary injunctive relief in light of the principles set forth above, and the precise wording of any such relief granted, we are constrained to remand the case for further consideration.

### III.

■ Ellis argues, however, that in any event a preliminary injunction[14] should be denied since even a narrowly read covenant would be unenforceable. He asserts the following applicable propositions of law: 1) the covenant was not supported by consideration, 2) the covenant contains no geographic restrictions, 3) the three-year time period is unreasonable.

We turn first to appellant's argument, citing *Byram v. Vaughn,* 68 F.Supp. 981 (D.D.C.1946), and cases from other jurisdictions, that there is no substantial likelihood that Hurson will prevail on the merits since the restraining covenant is unenforceable for want of consideration. However, *Byram* is weak persuasive authority in that its holding was substantially called into question by *Meyer v. Wineburgh,* 110 F.Supp. 957 (D.D.C.1953) (approved in

---

**13.** It appears from the briefs and oral argument, however, that Hurson interprets the order to apply only to the smaller number of clients. This should be clarified on remand.

**14.** We note that the restrictive covenant by its terms expressly contemplated use of an injunc-

tion to remedy violation of the agreement. While a court of equity is of course not bound by such a provision, "the clause may be influential in determining how the court will exercise its discretion." CALAMARI & PERILLO, *supra* note 7, § 14–31 at 564 n. 88.

*Wineburgh v. Meyer, supra* note 1),[15] which noted that it is hardly equitable to deny relief on formalistic grounds where, despite the absence of an obligation on employer's part for a specified duration of employment, the employer in fact employs defendant for a substantial period of time. *Id.* at 959. Such is the case here. Moreover, as the *Meyer* court noted, "[t]here is ... substantial authority supporting the right to equitable relief even in the absence of an obligation for a stated or substantial period of employment." *Id.* at 958.

Furthermore, appellants argument that the covenant is "not considered ancillary to the employment" since the restraining covenant was not entered contemporaneously to the formation of the employment, and that therefore Hurson was obliged to provide separate consideration to validate the covenant, is likewise untenable. The trial court heard testimony that Ellis both filled out an employment application which stated that he would be required to sign a restraining covenant as a condition of employment, and was informed at length about the restraining covenant during his interviews with Hurson. *See Seaboard Indus., Inc. v. Blair,* 10 N.C.App. 323, 178 S.E.2d 781 (1971) (covenant signed after employee commenced his employment held to be in fact part of original contract of employment and hence supported by consideration). Therefore, the cases of sister jurisdictions relied on by Ellis, which hold that new consideration is required where the employee is notified of the requirement of signing a restraining covenant only after the employment relationship has been established for a significant period of time, are distinguishable. Moreover, a number of courts which have considered the enforceability of covenants not to compete signed after the inception of employment have found sufficient consideration for such covenants in the fact that the employee was granted continued employment for a substantial time after the execution of the covenant. *See, e.g., Tasty Box Lunch Co. v. Kennedy,* 121 So.2d 52 (Fla.App. 1960) (court found continued employment and agreement to pay commissions to be adequate consideration for agreement not to compete signed by at-will employee after she had been working for employer for three months); Annotation, *Sufficiency of Consideration for Employee's Covenant Not To Compete Entered Into After Inception of Employment,* 51 A.L.R.3d 825 at § 4(b) (1973).

As for Ellis's contention regarding the covenant's lack of a geographic limitation, we note that the territorial limitation requirement is generally inapposite where the preliminary injunction entered by the trial court enjoins appellant, not generally from competing in the same field as Hurson, but merely from soliciting Hurson's customers. *See, e.g., Hebb v. Stump, Harvey and Cook, Inc.,* 25 Md.App. 478, 487–90, 334 A.2d 563, 569–70 (1975) (restraining covenant's lack of a specified geographical area not problematic where appellant not prevented generally from doing business but prevented only from doing business with former employer's clients); *Mills v. Murray,* 472 S.W.2d 6 (Mo.App.1971) (same). Furthermore, the cases reveal widespread adherence to the view that prohibitions against the solicitation of customers known to the employee by virtue of his former employment are enforceable as reasonable restrictions protecting legitimate business interests of the employer. *See generally* Annotation, *Enforceability of Contract not to Compete,* 61 A.L.R.3d 397 §§ 16–20, 37 (1975); *see, e.g., American Eutectic Welding Alloys Sales Co. v. Rodriguez,* 480 F.2d 223 (1st Cir.1973) (where plaintiffs sought relief limited to what is reasonably necessary for the protection of plaintiffs' legitimate business interests, i.e., not to enforce the broad no competition provision but to prohibit the solicitation of customers called on while in plaintiffs' em-

---

**15.** The trial court in the case before us, in rejecting appellant's argument, cited *Meyer,* stating "[w]hile the employment agreement did not require Hurson and Associates to employ Mr. Ellis for a minimum period of time, Hurson employed Mr. Ellis with compensation for approximately ten years. With the limited evidence before the court as to the adequacy of Mr. Ellis' compensation, the court is satisfied that Hurson fulfilled its obligation under the contract."

ploy, ·preliminary injunction should have been issued).[16]

We also agree with the trial court that the three year time duration of the restraining covenant was sufficiently reasonable so as not to preclude a finding of "substantial likelihood of success on the merits." As the trial court noted, agreements limiting competition for a period well in excess of three years have been sustained in this jurisdiction. *See Erikson v. Hawley,* 56 App.D.C. 268, 12 F.2d 491 (1926) (ten years); *Meyer v. Wineburgh,* 110 F.Supp. 957, 959 (D.D.C.1953) (approved in 95 U.S.App.D.C. 262, 221 F.2d 543 (1955); see note 1 *supra*) (five years).

Accordingly, the case is remanded for further consideration consistent with this opinion.

*So ordered.*

MACK, Associate Judge, Retired, dissenting:

I respectfully dissent. What case law there is in this jurisdiction is outdated, conflicting, and not very helpful in analyzing this case. (It is interesting to note that a Virginia court denied a preliminary injunction.) The very nature of the business—petitioning the Department of Agriculture and the Food and Drug Administration, with respect to food labeling, connotes a vital public interest best served by free competition. The federal court did not find a federal question but I note this company had been dealing with the Department of Agriculture for thirty years. As many as 12,000 of the 15,000 potential customers in this field may be current or former clients of this company. The scope of the prohibition, barring Mr. Ellis from engaging in his profession, is in my view unreasonable. Perhaps a more appropriate restriction

might have been to bar Ellis from soliciting any of those clients whose accounts he personally handled. By contrast, the harm to the company is that of losing business; in the event that it would ultimately prevail it could be made whole by seeking money damages. I would reverse the grant of preliminary injunction.

---

16. *See also Ehlers v. Iowa Warehouse Co.,* 188 N.W.2d 368 (Iowa 1971) (enjoining plaintiff from contacting, soliciting business from, or doing business with any person or firm contacted by plaintiff while employed by defendant); *Molina v. Barany,* 56 N.Y.S.2d 124 (1945) (plaintiffs held "clearly entitled to relief to the extent of restraining the defendant from soliciting customers of the plaintiffs with whom the defendant came in contact and solicited in behalf of and while in the employ of the plaintiffs"); *Mor-*

*gan's Home Equipment Corp. v. Martucci,* 390 Pa. 618, 136 A.2d 838 (1957) (enforcing restraining covenant to the extent of preventing former employees from competing for the patronage of employer's customers); *Ramey v. Combined American Insurance Co.,* 359 S.W.2d 523 (Tx. 1962) (appellee held entitled to have salesmen "enjoined from soliciting policyholders of appellee whom said salesmen had solicited" while in appellant's employ).