John W. JOHNSON, Plaintiff,

v.

MPR ASSOCIATES, INC., Defendant.

Civ. A. No. 94–605–A.

United States District Court, E.D. Virginia, Alexandria Division.

Oct. 24, 1994.

Brian M. Hirsch, Craig & Hirsch, Reston, VA, for plaintiff.

Danny Lee Ferguson, Deering & Ferguson, Alexandria, VA, for defendant.

## MEMORANDUM OPINION

HILTON, District Judge.

This action came before the Court on motions for summary judgment submitted by both plaintiff and defendant. The defendant, MPR Associates, is an engineering company headquartered in Alexandria, Virginia and the plaintiff, John Johnson, is a former employee of MPR. In 1984, the founders of the company developed a plan to sell MPR common stock to key employee-engineers of the company to ensure that MPR would be wholly owned by key insiders. The employees who chose to purchase the MPR stock became members of the executive echelon. Fifteen such stock sales to 27 key employees were executed. In each sale, the key employee purchaser made a small down payment on his stock and executed a promissory note in favor of MPR for the balance due on his stock purchases. Each purchaser became an MPR stockholder immediately and became entitled to all dividends after that date. The employee also executed a stock transfer agreement that contained a non-

competitive clause, providing that the employee would tender his stock to the corporation in the event that the employee became employed with a client of MPR within three years after leaving MPR's employ.

Johnson purchased MPR stock and executed the corresponding stock transfer agreement in 1986 and again in 1989. In August 1993 plaintiff began work for a client of MPR, Iowa Electric. MPR subsequently converted his stock into treasury stock and canceled the promissory note. Up to August 1993, Johnson had received dividend payments of $183,503, which exceeded by $16,000 his down payment for the stock. The stock value at present is $125,000. Plaintiff now asks this court for a declaratory judgment that the non-competitive clause of the stock transfer agreement is unenforceable as it is contrary to public policy because it imposes an unreasonable restraint on trade. The defendant argues that this clause is enforceable as a matter of law because it does not constitute a restraint on trade and, in the alternative, that the restraint is reasonable.

A motion for summary judgment may be granted only if the pleadings, depositions, interrogatory answers, admissions, and affidavits show "'that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Magill v. Gulf & Western Indus., Inc.*, 736 F.2d 976, 979 (4th Cir.1984) (quoting from Fed.R.Civ.P. 56(c)); *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In this instance, both parties agree that there are no material facts in dispute. Accordingly, summary judgment is appropriate in this case.

The plaintiff argues that although MPR imposed no restrictive covenant in any employment contract, the non-competitive clause in the stock purchase agreement amounts to such a restriction. However, MPR's sale of its stock to select key employees was a benefit conferred on those employees. Although the stock was sold at fair market value, MPR provided select employees with the opportunity to invest in MPR and become members of its executive echelon. Furthermore, to assist the employees in purchasing the stock, MPR allowed the employees to pay only a small down payment for the stock but receive dividends immediately, which meant that Johnson received income on the investment before he had fully paid for it. Indeed, Johnson's net cash flow from his MPR dividends has exceeded by more than $16,000 his down payment to MPR for his stock.

This circuit has recognized a distinction between restraints against a former employee's subsequent right to work and ancillary forfeitures of benefits resulting from an employee's work for a competitor. In *Rochester Corporation v. W.L. Rochester, Jr.*, 450 F.2d 118 (4th Cir.1971), in distinguishing between restraints on competitive employment contracts and those in pension plans, the Fourth Circuit held that the restraint in a pension plan "is not a prohibition on the employee's engaging in competitive work but is merely a denial of the right to participate in the retirement plan if he does engage." *Id.* at 123.

Similarly, MPR did not restrict plaintiff's ability to work at Iowa Electric. MPR merely denied Johnson the ability to obtain a benefit conferred on select employees if he went to work for a competitor. The denial of such a benefit does not operate as a restraint on trade. The plaintiff argues that the MPR covenant is not the same as forfeiture of pension benefits because Johnson paid for the stock. However, Johnson obtained the stock on very favorable terms and the dividend payments have exceeded his payment for the stock by over $16,000. Accordingly, MPR is not withholding any of the plaintiff's money, it is simply denying him the benefit of owning its stock.

Even assuming that the clause at issue constitutes a restraint on trade, the Court finds that the restraint is reasonable. Under D.C. law, which is the law governing this case,[1] a promise imposing a restraint on

---

1. Under Virginia law, questions of interpretation, validity, and enforceability of a contract are determined by the law where the contract was made. *See Blue Cross and Blue Shield Assoc. v.* *Group Hospitalization and Medical Services, Inc.*, 744 F.Supp. 700, 713, n. 4 (E.D.Va.1990); *Western Branch Holding Co. v. Trans Marketing Houston, Inc.*, 722 F.Supp. 1339, 1341 (E.D.Va.1989).

trade that is ancillary to an otherwise valid transaction is unreasonable and unenforceable if: "(a) the restraint is greater than is needed to protect the promisee's legitimate interest, or (b) the promisee's need is outweighed by the hardship to the promisor and the likely injury to the public." *Ellis v. James V. Hurson Assocs.*, 565 A.2d 615, 618 (D.C.App.1989). MPR clearly has a legitimate interest in avoiding defection of its owners and members of its executive echelon to its clients. The plaintiff argues, however, that the scope of the restraint imposed upon the plaintiff by the clause is far greater than necessary to protect MPR's legitimate interest because the clause prohibits an employee from working for a client of MPR without regard to whether such employment has anything to do with MPR's business or Johnson's former employment activities. D.C. law recognizes that "[a] restraint is easier to justify ... if the restraint is limited to the taking of [the] former employer's customers as contrasted with competition in general." *Ellis*, 565 A.2d at 619 (citing RESTATEMENT (SECOND) OF CONTRACTS, Section 188, cmt. g (1981)). The stock transfer agreement purports to do exactly that when it restricts the employer from working for a client of MPR. This restriction does not restrain competition in general as there are more than 3,000 utility companies in the United States of which only 29 are clients of MPR. Furthermore, the restriction is limited to three years. Courts have found agreements limiting competition for a period well in excess of three years to be reasonable. *See Ellis v. James V. Hurson Assocs.*, 565 A.2d 615, 620 (citing *Erikson v. Hawley*, 12 F.2d 491 (1926)) (ten years); *Meyer v. Wineburgh*, 110 F.Supp. 957, 959 (D.D.C.1953) (approved in 221 F.2d 543 (1955)) (five years).

Accordingly, the Court holds that the plaintiff's motion for summary judgment should be denied and the defendant's motion for summary judgment granted.

An appropriate order shall issue.

Here, the contract was made in the District of Columbia.

## ORDER

In accordance with the accompanying Memorandum Opinion, it is hereby

ORDERED that plaintiff's motion for summary judgment is DENIED and defendant's motion for summary judgment is GRANTED.