Catherine MILLER, Appellant,

v.

GREATER SOUTHEAST COMMUNITY HOSPITAL, et al., Appellees.

No. 84–1638.

District of Columbia Court of Appeals.

Submitted March 21, 1986.

Decided May 9, 1986.

Mercer Gordon Anderson, Washington, D.C., was on the brief for appellant.

Nicholas S. McConnell, Washington, D.C., was on the brief for appellee Greater Southeast Community Hosp.

Kenneth W. Curtis, Arlington, Va., was on the brief for appellee Lucio Villa-Real, M.D.

Before PRYOR, Chief Judge, and TERRY and STEADMAN, Associate Judges.

PRYOR, Chief Judge:

This is an appeal from summary judgment for the defendants in a medical malpractice action brought by Catherine Miller against Dr. Lucio Villa-Real and Greater Southeast Community Hospital. Appellant Miller contends that the trial judge committed error in entering judgment for the appellees because they failed to show an absence of genuine issues of material fact. We disagree with appellant and affirm the trial judge's ruling.

I

On May 22, 1979, appellant entered the Emergency Room of Greater Southeast Community Hospital (GSCH) complaining of rectal bleeding. She was examined by a physician in the emergency room and subsequently admitted to GSCH as a private patient of her regular attending physician, Dr. Villa-Real. After two diagnostic procedures were completed, Dr. Villa-Real scheduled appellant for a proctosigmoidoscopy,[1] possible polypectomy,[2] and a possible hemorrhoidectomy.[3]

On the evening of May 25, 1979, a consent form for these procedures was presented to appellant, but she refused to give her authorization. Dr. Villa-Real was advised of appellant's refusal and he discussed the matter with her that same evening. Appellant told the doctor that she did not wish to be anesthetized for the proctosigmoidoscopy, and that she would

---

1. An examination of the rectum and sigmoid colon by the insertion of a speculum or tubular instrument.

2. The surgical removal of a polyp.

3. The surgical removal of a hemorrhoid.

not consent to the surgical procedures without knowing what the prior examination revealed. According to appellant's deposition testimony, Dr. Villa-Real refused to release appellant from his services, but told appellant that she could either sign the consent form or sign herself out of the hospital. Mrs. Owens, a hospital administrator, also spoke with appellant on the evening of May 25. Mrs. Owens told appellant that Dr. Villa-Real had spoken to her about the dispute over the consent form. Appellant discussed the problem with Mrs. Owens, but refused to authorize the surgical procedures.

The next morning, May 26, Dr. Villa-Real, accompanied by another hospital administrator, Mr. Trefy, spoke with appellant again. Dr. Villa-Real told appellant that he would release her from his services. Appellant was told that she would be provided with a list of the names of physicians she could contact. On the evening of May 26, another hospital administrator, Mr. Callahan, visited appellant and provided her with the list. Appellant selected a name from the list, a Dr. Mitchell, and made arrangements for him to come to the hospital. Dr. Mitchell told appellant that he would see her in the hospital the following day. That same evening, one of the hospital nurses told appellant that Dr. Villa-Real had spoken with Dr. Mitchell about appellant's case. The nurse also stated that Dr. Villa-Real was transferring appellant's care to the new doctor.

The following day, May 27, appellant was informed that Dr. Mitchell was ill and unable to come to the hospital. On May 28, appellant was again told that Dr. Mitchell was ill and unable to come to the hospital. On both of these days, appellant was seen by Dr. Massimo Righini, Chief of Surgery at GSCH. When Dr. Mitchell failed to appear on May 29, appellant telephoned a physician who had treated her in the past, Dr. Irwin Ardam.

Dr. Ardam told appellant that she could discharge herself from GSCH and, depending upon how she felt, admit herself to another hospital or go home for the night and come to his office in the morning. Appellant discharged herself from GSCH on May 29 and returned to her home. The next morning, appellant went to Dr. Ardam's office. Dr. Ardam performed a proctoscopic examination on appellant, prescribed rectal suppositories, and advised her to stay off her feet for a week.

On May 22, 1982, appellant initiated a medical malpractice action against Dr. Villa-Real and GSCH, alleging that the defendants/appellees abandoned her during her stay in the hospital. Specifically, appellant claimed that Dr. Villa-Real withdrew from her case without providing a replacement, and that GSCH failed to provide her with a physician after Dr. Villa-Real terminated his services. Appellant alleges that, as a result of defendants' abandonment, she sustained pain and suffering, mental anguish, an unnecessary hospital stay, and an excessive hospital bill. Upon completion of discovery, Dr. Villa-Real and GSCH filed separate motions for summary judgment. Both motions were granted.

## II

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Super.Ct.Civ.R. 56(c); *Holland v. Hannan*, 456 A.2d 807, 814–15 (D.C.1983) (citations omitted). It is the moving party's burden to demonstrate the absence of any factual issue, and to show his entitlement to summary judgment. *Nader v. de Toledano*, 408 A.2d 31, 41–42 (D.C.1979), *cert. denied*, 444 U.S. 1078, 100 S.Ct. 1028, 62 L.Ed.2d 761 (1980). Once the moving party has complied with the requirements of Rule 56, the nonmovant "may not rest upon the mere allegations and denials of his pleading, ... his response ... must set forth specific facts showing that there is a genuine issue for

trial. If he does not [so] respond, summary judgment, if appropriate, shall be entered against him." *Stevens v. Airline Pilots Association International*, 413 A.2d 1305, 1308–09 (D.C.1980), *cert. denied*, 449 U.S. 1111, 101 S.Ct. 919, 66 L.Ed.2d 839 (1981).

Appellant challenges the grant of summary judgment in favor of appellees, asserting that a material factual dispute exists between the parties. To support this assertion, appellant contends that she was left in the hospital without a replacement physician. However, appellant's challenge to the grant of summary judgment is misdirected. There is no factual dispute as to how the physician-patient relationship was terminated.

Appellees' rendition of the events surrounding Dr. Villa-Real's withdrawal from appellant's case was taken from appellant's own deposition testimony. The record shows that after appellant and Dr. Villa-Real were unable to resolve their conflict over the consent for the surgical procedures, Dr. Villa-Real informed appellant that he would release her from his care. Appellant was provided with a list of the names of physicians that she could contact to arrange for substitute care. Appellant selected a name from the list, a Dr. Mitchell, and arranged for him to come to the hospital. Meanwhile, appellant was informed that Dr. Villa-Real had spoken with Dr. Mitchell and arranged to transfer her case to the new physician.

Here, as in her opposition to summary judgment, appellant maintains that a factual dispute exists. Yet appellant is unable to point to anything in the record that raises a controverted factual issue.[4] The sole question raised by appellant's complaint is whether, as a matter of law, Dr. Villa-Real's severance of the physician-patient relationship supports a legal theory of abandonment.

■ Abandonment has been defined as the termination of the professional relationship between the physician and patient at an unreasonable time or without affording the patient the opportunity to procure an equally qualified replacement. *See* 61 Am. Jur.2d *Physicians, Surgeons, and Other Healers* § 236 (1981); M. McCafferty, S. Meyer, *Medical Malpractice: Bases of Liability* § 2.21 (1985); Annot., 57 A.L.R.2d 432, 435 (1958). Implicit in appellant's claim of abandonment is the notion that if, at the time the professional relationship is terminated, the attending physician is not physically replaced by another physician, then the attending physician has abandoned his patient. We decline to adopt such a theory of abandonment. Where a patient is not in need of immediate medical attention, supplying the patient with a list of substitute physicians to replace the attending physician is a reasonable means of severing the professional relationship. *Payton v. Weaver*, 131 Cal.App.3d 38, 182 Cal.Rptr. 225 (1982); *see also*, 61 Am. Jur.2d, *supra*, at § 235.

In appellant's case, the evidence is uncontroverted that Dr. Villa-Real and GSCH assisted appellant in procuring another physician, and that at no time during appellant's stay at GSCH was she denied medical attention. Indeed, appellant's own medical expert testified at a deposition hearing that the medical care provided appellant was appropriate, and that the manner in which the doctor and the hospital handled the dispute with appellant complied with accepted standards of medical care. On the basis of this testimony, the controversy between appellant and Dr. Villa-Real was ripe for summary judgment in the doctor's favor because the evidence did not support appellant's theory of abandonment.

■ Similarly, GSCH met its burden of showing its entitlement to summary judg-

---

4. Appellees contend that appellant failed to file a statement identifying a material issue of fact in accordance with Super.Ct.Civ.R. 12–I. This omission is not necessarily fatal to appellant's opposition to summary judgment. *See, e.g., Stevens, supra,* 413 A.2d at 1308–09; *Holland, supra,* 456 A.2d at 814–15.

ment. As a hospital, GSCH was obligated to provide appellant with the reasonable care and attention that her condition required. *Alden v. Providence Hospital,* 127 U.S.App.D.C. 214, 217, 382 F.2d 163, 166 (1967). By affidavit, Dr. Righini stated that the hospital's house staff was available to provide appellant with any necessary medical coverage.[5] Moreover, during appellant's stay at GSCH, she was provided with skilled nursing care and Dr. Righini saw the appellant on the days that she was awaiting Dr. Mitchell's visit.

Once appellees demonstrated that the evidence, if uncontroverted, supported their motions for summary judgment, it was incumbent upon appellant to establish a prima facie case of medical malpractice. *Nader, supra,* 408 A.2d at 48–49. Such a case consists of evidence which (1) establishes the applicable standard of care, (2) demonstrates that the standard has been violated, and (3) proves a causal relationship between the violation and the alleged harm. *Kosberg v. Washington Hospital Center, Inc.,* 129 U.S.App.D.C. 322, 324, 394 F.2d 947, 949 (1968) (footnote omitted). We conclude that, as to both Dr. Villa-Real and GSCH, appellant failed to make out a prima facie case of abandonment.

In medical malpractice actions, expert testimony is usually required to prove the appropriate standard of care and causation. *Sponaugle v. Pre-Term, Inc.,* 411 A.2d 366, 368 (D.C.1980). Appellant argues that where the physician's conduct is so egregious that the jury can infer negligence, expert testimony is not necessary. *See Haven v. Randolph,* 161 U.S.App.D.C. 150, 151, 494 F.2d 1069, 1070 (1974). Because appellant did in fact depose an expert medical witness, Dr. Irwin Ardam, we are not obliged to resolve this issue.

In any event, Dr. Ardam's testimony was fatal to appellant's case. He testified that the medical treatment appellant received and the medical management of her case were appropriate in all respects. On the basis of this record, there is no doubt that the grant of summary judgment in favor of appellees was appropriate.

*Affirmed.*

---

5. We find no merit to appellant's attack on Dr. Righini's affidavit. No objections as to the affidavit's admissibility were presented to the trial court, and any doubt as to the sufficiency of the affidavit affects its weight, not its admissibility. *See, e.g., Baerman v. Reisinger,* 124 U.S.App.D.C. 180, 181, 363 F.2d 309, 310 (1966).