Kamran TAVAKOLI–NOURI,
Appellant,

v.

Stephen F. GUNTHER,
et al., Appellees.

No. 98–CV–3.

District of Columbia Court of Appeals.

Argued Sept. 23, 1999.
Decided Feb. 10, 2000.

*See generally Walden v. United States,* 366    A.2d 1075, 1077 (D.C.1976).

Kamran Tavakoli–Nouri, pro se.

Leo A. Roth, Jr., Washington, DC, for appellees.

Before REID and WASHINGTON, Associate Judges, and GALLAGHER, Senior Judge.

WASHINGTON, Associate Judge:

Kamran Tavakoli–Nouri appeals from the trial court's decision to grant appel- lees', Stephen F. Gunther, *et al.*, motion for summary judgment. The trial court granted appellees' summary judgment mo- tion because Tavakoli–Nouri failed to time- ly file a Super. Ct. Civ. R. 26(b)(4) state- ment listing his expert witnesses and the testimony upon which he intended to rely at trial. The trial court granted the mo- tion after denying Tavakoli–Nouri's motion to extend the time to file the required Super. Ct. Civ. R. 26(b)(4) statement. In granting the motion for summary judg- ment, the trial court found that without expert testimony to establish the requisite duty of care he was owed or to establish that a breach of that duty of care occurred, Tavakoli–Nouri could not present suffi- cient evidence to prevail on his medical malpractice claims as a matter of law. On appeal, Tavakoli–Nouri argues that: 1) the trial court improperly dismissed his claims of medical malpractice, abandonment, and lack of informed consent on summary judgment because the use of expert testi- mony was not required; and 2) the trial court erred in ruling on the summary judgment motion in his absence. After a review of the record, we affirm the trial court's dismissal of the medical malprac- tice and abandonment claims, but reverse the trial court's ruling dismissing Tavako- li–Nouri's remaining claim of lack of in- formed consent.

## I. FACTUAL SUMMARY

Tavakoli–Nouri was injured in an auto- mobile accident in September of 1993. He was originally transported to Prince George's Hospital Center, but was subse- quently transferred to Washington Hospi- tal Center where he received inpatient care in September and October of 1993. Tavakoli–Nouri underwent surgery at the Washington Hospital Center. Stephen F. Gunther, M.D. performed the operation on Tavakoli–Nouri's knee and Dr. DiPasquale performed the operation on his pelvis. Ta- vakoli–Nouri asserts that he suffered pen- ile deformity, impotence, urologic dysfunc- tions, hernia enlargement, and unsutured

rectus fascia muscle from the pelvic operation; as well as nerve injury to his right leg and toes claw deformity as a result of the surgery on his knee. Tavakoli–Nouri brought a medical malpractice suit against appellees on September 25, 1996, alleging that the doctors and the Washington Hospital Center: 1) were negligent when they performed the operations on his knee and pelvis; 2) abandoned him in violation of the established standard of medical care; 3) performed the surgery on his pelvis without his permission; and 4) performed the surgery of his knee without adequately informing him of the adverse consequences of the surgery.

## II. STANDARD OF REVIEW

In reviewing a trial court order granting a summary judgment motion, we conduct an independent review of the record, and apply the same standard of review used by the trial court in the first instance. *Sherman v. District of Columbia*, 653 A.2d 866, 869 (D.C.1995). Summary judgment is appropriate if, viewing the record in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Super. Ct. Civ. R. 56(c); *American Continental Ins. Co. v. Pooya*, 666 A.2d 1193, 1197 (D.C.1995).

## III. ANALYSIS

Tavakoli–Nouri alleges that expert testimony was not required for his claims of medical malpractice for the surgery on his knee and pelvis against appellees. "In medical malpractice actions, expert testimony is usually required to prove the appropriate standard of care and causation." *Miller v. Greater Southeast Community Hospital, et al.*, 508 A.2d 927, 930 (D.C.1986). However, "[a]llowing a jury to make its own inferences from the proven facts may be permissible when a physician has committed a blunder so egregious that a layman is capable of comprehending its enormity." *Haven v. Randolph*, 161

U.S.App. D.C. 150, 151, 494 F.2d 1069, 1070 (1974). Tavakoli–Nouri contends that the doctors' surgical performance in this case constitute such egregious acts that the doctors' negligence can be inferred by a jury without expert testimony. We disagree that his claims amount to a "blunder so egregious" that expert testimony is not required. *See Haven, supra*. In this case, the record indicates that Tavakoli–Nouri underwent open reduction and internal fixation of his pelvis and bilateral plating and bone graft reconstructions were performed on his knee. The medical procedures undertaken in this case were complex surgical operations and are not issues "[w]here laymen can say, as a matter of common knowledge and observation, that the type of harm would not ordinarily occur in the absence of negligence." *Cleary v. Group Health Ass'n, Inc.*, 691 A.2d 148, 153 (D.C. 1997) (citing *Harris v. Cafritz Mem'l Hosp.*, 364 A.2d 135, 137 (D.C.1976)).

Similarly, Tavakoli–Nouri argues that the trial court erred in dismissing his claim of abandonment based on his failure to retain an expert witness. Abandonment involves the "termination of the professional relationship between the physician and patient at an unreasonable time or without affording the patient the opportunity to procure an equally qualified replacement." *Miller*, 508 A.2d at 929. Tavakoli–Nouri alleges that because his primary physicians' visits were nine (9) days apart, coupled with the fact that his knee surgery was not scheduled until one month after being admitted to Washington Hospital, he was abandoned. However, as we stated in *Miller*, 508 A.2d at 930, an appropriate standard of care must be established by expert testimony so that a trier of fact can determine whether the conduct of Tavakoli–Nouri's primary physician met the established standard of care or whether the severance, if any, of that relationship was accomplished in compliance with appropriate standards.

■ Tavakoli–Nouri's complaint alleges two separate causes of action for lack of informed consent. His first claim alleges that Doreen DiPasquale, M.D. operated on his pelvis without his consent to perform the surgery. Because this is not a claim of lack of informed consent based on negligence, but is rather a claim that Dr. DiPasquale committed a common law battery, this claim is governed by a one-year statute of limitations and is time-barred. See D.C.Code § 12–301(4) (1981). However, Tavakoli–Nouri's second claim of lack of informed consent against Dr. Gunther for negligently failing to disclose the possible adverse consequences of the surgery was timely filed within the requisite three-year statute of limitations. D.C.Code § 12–301(8). See Anderson v. Jones, 606 A.2d 185, 187 (D.C.1992) (holding that a "cause of action for negligence for lack of informed consent" is not time-barred as a battery action); Jones v. Howard University, Inc., 589 A.2d 419, 422 (D.C.1991); W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 32, at 189–93 (5th ed.1984) (commenting that courts have begun to recognize that lack of informed consent is a matter concerning the standard of professional conduct, and "negligence has now generally displaced battery as the basis for liability") (footnote omitted).

■ Tavakoli–Nouri argues that no expert witness testimony was necessary for his claim of lack of informed consent against Dr. Gunther because his amended complaint alleges that "Gunther and his resident[ ] doctors failed to tell plaintiff any information before the knee surgery ... about the possib[le] ... occurrence of ... additional deformities and impairments ...." Tavakoli–Nouri contends that because he was not given any information before the surgery about the risks involved in the surgery, appellees could not have obtained his informed consent. Tavakoli–Nouri relies heavily on a 1972 decision by the United States Court of Appeals for the District of Columbia Circuit to support his argument that expert testimony was not necessary for him to proceed on this cause of action. In Canterbury v. Spence, 150 U.S.App. D.C. 263, 283, 464 F.2d 772, 792, cert. denied, 409 U.S. 1064, 93 S.Ct. 560, 34 L.Ed.2d 518 (1972),[1] the United States Court of Appeals for the District of Columbia Circuit opined that "[l]ay witness testimony can competently establish a physician's failure to disclose particular risk information, the patient's lack of knowledge of the risk, and the adverse consequences following the treatment." Furthermore, in Eibl v. Kogan, 494 A.2d 640, 642 n. 2 (D.C.1985), this court stated that questions of credibility involving whether an individual had been informed of risks and alternatives to a medical procedure are traditionally within the province of the jury. Tavakoli–Nouri's claim does not assert that he was told of some risks and not others, but that he was not supplied with any information regarding any of the risks associated with the knee surgery. Because the question before the trier of fact is essentially a question of credibility, and not of science, the trial court erred in dismissing Tavakoli–Nouri's informed consent cause of action because his claim, that he was provided with no information before the surgery, could be competently established by a lay witness.[2] See Eibl, 494 A.2d at 642 n. 2.

1. Although Canterbury was decided by the United States Court of Appeals for the District of Columbia Circuit after February 1, 1971, see M.A.P. v. Ryan, 285 A.2d 310, 313 (D.C. 1971), we are bound by this decision because we expressly adopted Canterbury in Crain v. Allison, 443 A.2d 558, 562 (1982).

2. It is important to note that in the Eibl case, the nature of the risks were uncontested, and the credibility question that could be established by lay witness testimony was whether or not the doctor actually informed the patient of this information. However, even if Tavakoli–Nouri's allegation is that he was not sufficiently informed, he was not required to present independent expert testimony to establish what material risks required disclosure. This court held in Abbey v. Jackson, 483 A.2d 330, 333 (D.C.1984), that a plaintiff "can establish a prima facie case of lack of in-

■ Finally, Tavakoli–Nouri argues that the trial court abused its discretion by granting appellees' motion for summary judgment in his absence.[3] As a preliminary matter, there is no requirement that a trial court judge conduct a hearing before it rules on a motion for summary judgment, and Tavakoli–Nouri proffers no authority to the contrary. In any event, this court has held that where there has been evidence of a pattern of dilatory conduct, dismissal is not an abuse of discretion. *See generally Dobbs v. Providence Hospital,* 736 A.2d 216 (D.C.1999). In this case, the record is replete with examples of conduct on the part of Tavakoli–Nouri that supports the trial court's decision to go forward with the hearing in his absence. Tavakoli–Nouri repeatedly failed to comply with the trial court's scheduling order despite the fact that the court's scheduling order had been amended several times to accommodate him. Discovery had closed, and Tavakoli–Nouri had failed to proffer expert testimony sufficient to support his claims for liability. Because Tavakoli–Nouri failed to heed the advice of the trial court that he retain counsel in a timely fashion to assist in the prosecution of his lawsuit, and failed to appear for three scheduled court hearings, the trial court's decision to rule on appellees' motion for summary judgment was not an abuse of discretion.

## IV. CONCLUSION

Tavakoli–Nouri had not and could not, without further leave of the court, produce sufficient evidence to create a material issue of fact for a jury on the questions of medical malpractice and abandonment. Therefore, appellees' were entitled to sum-

mary judgment on those issues as a matter of law. However, because expert testimony was not required to establish his cause of action for lack of informed consent and a material issue of genuine fact remained as to whether any information was disclosed to Tavakoli–Nouri regarding his knee surgery, summary judgment was not appropriate on this issue.

Accordingly, this case is hereby

*Affirmed in part and reversed and remanded in part.*

---

formed consent through the expert testimony of defendant physicians and defense witnesses without calling independent experts ."

3. Tavakoli–Nouri also argues that the trial court abused its discretion because it failed to carefully consider counsel's representation that he would enter a formal appearance upon the reopening of discovery. However, we find no merit in this argument because the

record clearly shows that the trial court, in reaching its decision, considered counsel's representations on December 19, 1999, Tavakoli–Nouri's past failure to adhere to deadlines, Tavakoli–Nouri's failure to appear at scheduled hearings, and the prejudicial consequences to appellees' by granting another time extension in this case.