Daniel DEUTSCH, et al.,
Appellants/Cross–
Appellees,

v.

Stephen BARSKY, Appellee/Cross–
Appellant.

Nos. 00–CV–114, 00–CV–168.

District of Columbia Court of Appeals.

Argued Jan. 10, 2001.
Decided April 11, 2002.

Edward Modell, Washington, DC, for appellants/cross-appellees.

Geoffrey P. Gitner, Washington, DC, for appellee/cross-appellant.

Before WAGNER, Chief Judge, and TERRY and REID, Associate Judges.

REID, Associate Judge:

This case involves the validity of a covenant not to compete which is set forth in an agreement between two dentists, appellants/cross-appellees Dr. Daniel Deutsch and Daniel J. Deutsch. D.D.S., P.C. (collectively, "Dr.Deutsch"), and appellee/cross-appellant Dr. Stephen Barsky, who in effect ended their "partnership." After determining that the contract damages flowing from the breach of the covenant could not be ascertained, the trial court granted summary judgment in favor of Dr. Barsky on the ground that the covenant not to compete was unreasonable and unenforceable.

On cross-appeal, Dr. Barsky argues that the trial court erred in concluding that contract damages for breach of the covenant not to compete are not ascertainable at law. Detecting no error in this ruling, we affirm that portion of the trial court's decision.

Dr. Deutsch contends in his appeal that the trial court did not properly apply the factors set forth in *Ellis v. James V. Hurson Assocs., Inc.*, 565 A.2d 615 (D.C.1989), before reaching its conclusion that the covenant not to compete is unreasonable and unenforceable. We agree. Consequently, we reverse that part of the trial court's summary judgment decision relating to the validity and enforceability of the covenant,

and remand this matter to the trial court for further proceedings consistent with this opinion.

## FACTUAL SUMMARY

The record before us shows that Dr. Deutsch, who is licensed to practice dentistry in the District of Columbia, established a professional corporation known as "Daniel J. Deutsch, D.D.S., P.C."[1] When Dr. Barsky acquired and became owner of fifty percent of the shares of the corporation on June 1, 1990, Dr. Deutsch and Dr. Barsky became "partners," according to Dr. Deutsch's deposition testimony.[2] From around June 1, 1990 to December 3, 1996, Dr. Barsky and Dr. Deutsch occupied the same office at 1925 K Street, N.W. in the District. Each had separate patients, but there was mutual collaboration in case of emergencies.

On October 1, 1993, Dr. Deutsch and Dr. Barsky executed an agreement ("the October 1st agreement") under which Dr. Barsky sold his shares of the professional corporation to Dr. Deutsch in exchange for $506,000.00. Dr. Barsky also agreed to rent space for his dental practice from the professional corporation for a minimum of five and one-half years from the effective date of the October 1st agreement, to pay management fees (for example, for billings and collections), and to share operating expenses (for example, for a receptionist and a telephone system).

The October 1st agreement contained a mutual covenant not to compete clause in paragraph 16 which specified in full:

> *Departure from the Practice of Dentistry.* The parties acknowledge and agree that if either Seller or Shareholder leaves the practice of dentistry at the Leased Premises while Management Fees are due, the other party shall have a right to the departing party's dental practice to satisfy any outstanding obligations. Seller and Shareholder shall each execute Security Agreements and Financing Statements granting the other party a security interest in their respective practices. If either Seller or Shareholder leaves the practice of dentistry during the five and one-half year period following the date of this Agreement and any obligations under this Agreement remain outstanding, the departing party covenants and agrees that for a period of two years following said departure, he will not, as an individual, stockholder, officer, director, partner, agent, employee, consultant or representative, engage in the practice of dentistry within a radius of five miles from the Leased Premises.

Thus, the mutual covenant not to compete consisted of a two-year bar on dental practice within a five-mile radius of 1925 K Street, N.W., if either party left the 1925 K Street office during the five and one-half year term of the agreement while outstanding obligations remained under the agreement.

In June 1996, while the October 1st agreement was still in effect, Dr. Barsky entered into a lease for the rental of office space at 1145 19th Street, N.W., a location two blocks from 1925 K Street, N.W., and thus, within the five-mile radius specified in the covenant not to compete. Dr. Barsky did not move into the space immediately, and on December 1, 1996, Dr. Deutsch learned of Dr. Barsky's new lease agreement. Dr. Barsky relocated his practice to the 19th Street address on December 4, 1996, one day after appellants filed suit in the trial court, and while he still had obligations remaining under the October 1st agreement.

---

1. The professional corporation was established under District of Columbia laws.

2. Dr. Deutsch owned the other fifty percent.

After Dr. Barsky filed for bankruptcy and the automatic stay provision of 11 U.S.C. § 362(a) became effective, Dr. Deutsch dismissed his trial court complaint without prejudice. Dr. Barsky's bankruptcy action proceeded and eventually resulted in a final order relating to Dr. Deutsch's bankruptcy claim against Dr. Barsky. Entered on October 15, 1998, the order specified in relevant part:

> ORDERED, that the rights of [Dr. Deutsch] to seek enforcement of the covenant not to compete contained in the Agreement between the parties dated October 1, 1993 ("the Agreement") are determined, in part, as follows:
>
> A. The rejection of the Agreement by the debtor, Stephen Barsky, is a breach by Dr. Barsky of the Agreement; and
>
> B. Any right to damages arising from the breach of the Agreement constitutes a claim within this bankruptcy case
>
> * * *
>
> F. If, and only if, a court of competent jurisdiction determines that under state law no adequate right in damages exists as a consequence of the breach of the agreement, because an adequate determination of the amount of damages cannot be made sufficient to permit a judgment to be entered under the standards of the law of the District of Co-

lumbia, [Dr. Deutsch] is entitled to seek specific performance of the covenant not to compete contained in the Agreement. . . .

Furthermore, the bankruptcy court ruled that Dr. Deutsch would be "permit[ted] . . . to bring an action in the courts of the District of Columbia seeking a determination as to the issue of the existence of an ascertainable right in damages," or if necessary, "enforcement of the covenant not to compete. . . ."

In accordance with the order of the bankruptcy court, Dr. Deutsch filed a verified complaint in the trial court on December 8, 1998, seeking declaratory and injunctive relief. The verified complaint alleged that an adequate determination of damages relating to Dr. Barsky's breach of the covenant not to compete could not be made, and hence, Dr. Deutsch sought a two-year injunction, from the date of the final order issued in the instant litigation, precluding Dr. Barsky from conducting a dental practice within a five-mile radius of 1925 K Street, N.W.

Dr. Barsky moved for summary judgment on Dr. Deutsch's verified complaint. In disposing of the motion, the trial court concluded that money damages were not ascertainable, and that the covenant not to compete in the October 1st agreement "is unenforceable and without force or effect."[3] Dr. Deutsch filed a timely notice

---

**3.** The trial judge stated that neither party had "identified" a method for "establish[ing] with any reasonable certainty the money damages to which plaintiff would be entitled if the covenant were found to be breached." Nor had Dr. Deutsch "demonstrated the enforceability of the covenant not[] to [] compete." The trial judge described the covenant as "unreasonable." He also concluded that:

> The terms of the restraint are unduly severe. Prohibiting defendant from practicing within a five-mile radius would restrict defendant to distant neighborhoods, e.g., Brookland, Congress Heights, or Friendship Heights, and two years of restriction is

not justified by reference to any identifiable need of plaintiff's or by the usages or customs of his profession. Importantly, a covenant not to compete "must protect some legitimate interest of the employer and must be reasonable in [its] scope." Mercer M[gmt.] Consulting, Inc. v. Wilde, 920 F.Supp. 219, 237 (D.D.C.1996) (citing Ellis, supra, 565 A.2d at 618). Further, the restraint must not be greated than needed to protect such a legitimate interest. Id. See also National Chemsearch Corp. of New York v. Hanker, 309 F.Supp. 1278 (D.D.C. 1970). Plaintiff is unable to identify with any particularity what interest the restrictive covenant is designed to protect. It

of appeal, and Dr. Barsky lodged a cross-appeal.

## ANALYSIS

Dr. Deutsch challenges the trial court's conclusion that the covenant not to compete is unreasonable under District of Columbia law, and argues that summary judgment was inappropriate because the trial court failed to apply the specific factors set forth in *Ellis, supra*, and did not resolve "several genuine issues of disputed facts presented to [it] by Dr. Deutsch's pleadings." Dr. Barsky takes issue with these arguments, maintaining that the trial court did not err in finding the covenant not to compete unenforceable as a matter of law, and further, that this court should reject Dr. Deutsch's interpretation of the October 1st agreement.

In his cross-appeal, Dr. Barsky contends that the trial court erred in concluding that money damages for breach of the covenant not to compete are not ascertainable. He asserts that Dr. Deutsch made a dollar-specific claim in the bankruptcy court ($542,970.04); and that, because Dr. Deutsch has an adequate remedy at law, the covenant may not be specifically enforced. In response to Dr. Barsky's cross-appeal, Dr. Deutsch questions Dr. Barsky's interpretation of District law and of the October 1st agreement. In addition, he states that the dollar amount he sought in the bankruptcy claim was for other matters, including "rents and other definite payments from Dr. Barsky ...,"[4] and that these amounts were actually discharged by the bankruptcy proceeding.

■■■ We repeat our well-known standard for review of a denial of a summary judgment motion. "Summary judgment 'is

appropriate only when there are no material facts in issue and when it is clear that the moving party is entitled to judgment as a matter of law.' " *Puma v. Sullivan*, 746 A.2d 871, 874 (D.C.2000) (quoting *Willis v. Cheek*, 387 A.2d 716, 719 (D.C.1978) (citations omitted)). "In reviewing a trial court order granting a summary judgment motion, we conduct an independent review of the record...." *Tavakoli–Nouri v. Gunther*, 745 A.2d 939, 941 (D.C.2000) (citing *Sherman v. District of Columbia*, 653 A.2d 866, 869 (D.C.1995)). We view the record " 'in the light most favorable to the party opposing the motion.' " *Kelley v. Broadmoor Coop. Apartments*, 676 A.2d 453, 456 (D.C.1996) (citations omitted). With respect to contract interpretation, "[s]ummary judgment is appropriate when the agreement is unambiguous and where there is no question as to the parties' intent." *National Trade Prods. v. Information Dev. Corp.*, 728 A.2d 106, 109 (D.C. 1999) (citation and quotation omitted). "A contract is ambiguous 'when it is reasonably susceptible of different constructions or interpretations, or of two or more different meanings....' " *Id.* (quoting *Rastall v. CSX Transp., Inc.*, 697 A.2d 46, 51 (D.C.1997) (quotation omitted)) (further citation omitted).

In essence, Dr. Deutsch asks us to review and reverse the trial court's summary judgment determination that the covenant not to compete with Dr. Deutsch's dental practice, which appears in paragraph 16 of the October 1st agreement, could not be enforced because as a matter of law it is an unreasonable restraint of trade, and there are no outstanding genuine issues of material facts which must be resolved prior to summary disposition. In order to

---

appears to serve only as a device in terrorem.

4. The trial court recognized that the $542,970.04 sum included "sixteen monthly

payments of $19,715.08" each, and $225,528.76 in reinstated liability. These debts were discharged in the bankruptcy proceeding.

ascertain whether the trial court erred in granting summary judgment in behalf of Dr. Barsky, we first review pertinent case law regarding covenants not to compete, or covenants in restraint of trade.

We have never held that a covenant not to compete that is ancillary to a valid transaction or agreement between dentists constitutes a *per se* violation of public policy. Indeed, the early cases in this jurisdiction relating to covenants not to compete in various settings, including covenants set forth in a contract for the sale of stock or assets of a business, recognized certain fundamental principles which are incompatible with a *per se* violation of public policy: (1) the restraint on trade must be reasonable; (2) if the restraint is "not larger or more extensive than was required for the necessary protection of the [business interest], then the contract would seem to be valid"; and (3) "[a]fter a party has deliberately made his contract, and received consideration therefor, it must plainly appear that it contravenes public policy before the courts will declare it void upon that ground." *Godfrey v. Roessle*, 5 App. D.C. 299, 303–04 (1895). Thus, one who sold his assets in a drug store business and "agree[d] not to conduct, own, or operate a drug store within a radius of ten (10) blocks" of the buyer, was bound by the covenant not to compete. *Allison v. Seigle*, 65 App.D.C. 45, 46, 79 F.2d 170, 171 (1935). The court determined that the contract, "limited as to time and space, [was] valid." *Id.*, 65 App. D.C. at 46, 79 F.2d at 171 (citing *Erikson v. Hawley*, 56 App. D.C. 268, 12 F.2d 491 (1926) (other citation omitted)).

In *Erikson, supra,* the court stressed "the right to contract and the policy of the courts to see that this right is not unreasonably abridged." *Id.* at 272, 12 F.2d at 495. However, the court also recognized, after careful scrutiny, that "where the restriction was not limited as to time and territory, and where, by [its] terms, great hardship was placed upon the employee[,]" it would be invalidated. *Id.* at 271, 12 F.2d at 494.[5] *Chemical Fireproofing Corp. v. Krouse*, 81 U.S.App. D.C. 145, 155 F.2d 422 (1946) affords insight into the factors that may determine the reasonableness of time and territory restrictions on business endeavors. By applying the following factors, the court held a three-year covenant not to compete for the customers of a kitchen cleaning business to be unreasonable and invalid: "[T]he nature of the business, the character of the service performed by, and the station of, the employee, in relation to the area in which the former employer seeks to be protected." *Id.* at 146, 155 F.2d at 423.[6] A later court granted a temporary injunction enforcing a five-year restriction on business competition within a thirty-mile radius "of any office or offices with which [an employee of a pest extermination or control business had] been directly connected," by inter-

---

**5.** *But see Hartung v. Hilda Miller, Inc.*, 77 U.S.App. D.C. 164, 133 F.2d 401 (1943) where a 10 year restriction precluding the seller of a District of Columbia furniture business from engaging in the furniture business within the District was enforced in part by prohibiting the seller from advertising in Washington, D.C. papers in an effort to attract District residents to his Silver Spring, Maryland store.

**6.** The court declared: "[W]e think the three year provision, even assuming it is limited to the territory agreed upon [*i.e.*, Virginia, West Virginia, Maryland, Delaware, Pennsylvania, and the District of Columbia], is an unreasonable and invalid restraint, from the standpoint of time as well as territory. The area covered by this agreement is extremely wide when viewed in the light of what appears to be the character of the business. It would, we think, be violative of public policy to enforce this restriction." *Chemical Fireproofing Corp., supra,* 81 U.S.App. D.C. at 146, 155 F.2d at 423.

preting the restriction to apply only to the customers secured or solicited by the former employer. *Meyer v. Wineburgh,* 110 F.Supp. 957, 958 (D.D.C.1953).[7] *See also Wineburgh v. Meyer,* 95 U.S.App. D.C. 262, 221 F.2d 543 (1955) (affirming the permanent injunction in a somewhat modified form).

Other than the cases cited above, only a few others from this jurisdiction that are not relevant to our discussion, broached the subject of covenants not to compete.[8] As we noted in *Ellis, supra,* "there is little binding precedent in our jurisprudence dealing with covenants not to compete...." 565 A.2d at 616 n. 1 (citations omitted). The issue ultimately presented in *Ellis,* which involved a preliminary injunction, was, "whether there is a substantial likelihood that a covenant not to solicit the company's clients or customers for a period of three years will be found to be valid and binding upon [a former employee]." *Id.* at 618 (footnote omitted). There, we adopted §§ 186–188 of the RESTATEMENT (SECOND) OF CONTRACTS: RESTRAINT OF TRADE (1981), which we described as "a codification and explanation of the applicable common law principles as distilled from the case law of the nation," *Ellis, supra,* 565 A.2d at 618, and remanded the matter to the trial court for further proceedings.

■ Section 186 of the RESTATEMENT (SECOND) OF CONTRACTS provides:

(1) A promise is unenforceable on grounds of public policy if it is unreasonably in restraint of trade.

(2) A promise is in restraint of trade if its performance would limit competition in any business or restrict the promisor in the exercise of a gainful occupation.

Section 187 specifies that: "A promise to refrain from competition that imposes a restraint that is not ancillary to an otherwise valid transaction or relationship is unreasonably in restraint of trade." Comment *b* to § 187 states:

*Non-ancillary restraints.* In order for a promise to refrain from competition to be reasonable, the promisee must have an interest worthy of protection that can be balanced against the hardship on the promisor and the likely injury to the public. See § 188 and Comments *b* and *c* to that Section. The restraint must, therefore, be subsidiary to an otherwise valid transaction or relationship that gives rise to such an interest. A restraint that is not so related to an otherwise valid transaction or relationship is necessarily unreasonable. The promisee's interest may arise out of acquisition from the promisor of a business. See § 188(2)(a). It may arise out of a relation between himself as employer or principal and the promisor as employee or agent. See § 188(2)(b). Or it may arise out of a relation between himself and the promisor as partners. See § 188(2)(c). This enumeration does not purport to be exhaustive, but a promise not to com[]pete that is not ancillary to some such transaction or relationship as

110 F.Supp. at 959 (footnote omitted).

---

**7.** The *Meyer* trial court stated:

It is well recognized in this jurisdiction, as it is generally in other jurisdictions, that, where a restrictive covenant of the kind here involved is reasonably limited as to time and territory, and is not such as to constitute an unfair restraint of trade contrary to public policy, or to work an unfair hardship upon the restricted party, it is a valid contractual obligation.

**8.** *See Saul v. Thalis,* 156 F.Supp. 408 (D.D.C. 1957) (agreement between a franchise and business owner and a subsequent employment contract); *Byram v. Vaughn,* 68 F.Supp. 981 (D.D.C.1946) (restriction in employment contract lacking mutuality of obligation).

these is unreasonable because it protects no legitimate interest of the promisee. This is so even though the promise would be enforceable if it were an ancillary promise. In order for a restraint to be ancillary to a transaction or relationship the promise that imposes it must be made as part of that transaction or relationship. A promise made subsequent to the transaction or relationship is not ancillary to it. In the cases of an ongoing transaction or relationship, however, it is enough if the promise is made before its termination, as long as it is supported by consideration and meets the other requirements of enforceability.

Section 188 relating to "ancillary restraints on competition" reads:

(1) A promise to refrain from competition that imposes a restraint that is ancillary to an otherwise valid transaction or relationship is unreasonably in restraint of trade if:

(a) the restraint is greater than is needed to protect the promisee's legitimate interest, or

(b) the promisee's need is outweighed by the hardship to the promisor and the likely injury to the public.

(2) Promises imposing restraints that are ancillary to a valid transaction or relationship include the following:

(a) a promise by the seller of a business not to compete with the buyer in such a way as to injure the value of the business sold;

(b) a promise by an employee or other agent not to compete with his employer or other principal;

(c) a promise by a partner not to compete with the partnership.

Comment *a* to § 188 makes it clear that ancillary restraints are not *per se* invalid, and that it may be necessary for the courts to engage in a balancing of interests. Comment *e* points out that § 188(2) offers "[e]xamples of ancillary restraints," but that, "[t]he list is not an exclusive one and there may be other situations in which a valid transaction or relationship gives the promisee a legitimate interest sufficient to sustain a promise not to compete." [9]

Here, the trial court deemed the restriction in paragraph 16 of the October 1st agreement to be unenforceable and invalid because: (1) Dr. Deutsch was "unable to identify with any particularity what interest the restrictive covenant is designed to protect"; and (2) the impact or hardship on Dr. Barsky was too great because the restraint "appears to serve only as a device in terrorem." We now examine these conclusions under the applicable law.

■ From our review of the limited law of this jurisdiction and the provisions of §§ 186–188 of the RESTATEMENT (SECOND) OF CONTRACTS, it is clear that the restriction in paragraph 16 of the October 1st agreement does not constitute a *per se* restraint of trade. Nor did the trial court treat it as such. The restriction is ancillary to a valid transaction or agreement between Dr. Barsky and Dr. Deutsch, and Comment *a* to § 188 of the Restatement indicates that, "ancillary restraints are not necessarily invalid." However, Comment *d* to § 188 indicates that restrictions may be limited "by type of activity, by geographical area, and by time."

■ We are satisfied that the two-year, five-mile radius restriction in paragraph 16

**9.** In their analysis of the RESTATEMENT (SECOND) OF CONTRACTS as it relates to covenants in restraint of trade, two professors discuss specific examples of ancillary restraints that were included in the first restatement but not explicitly set forth in the second. They also analyze whether, in their view, the second restatement is faithful to common law principles. *See* Milton Handler and Daniel E. Lazaroff, *Restraint of Trade and the Restatement (Second) of Contracts,* 57 N.Y.U. L.Rev. 669 (1982).

of the October 1st agreement is not facially invalid. A restraint "limited to time and space" may be valid. *Allison, supra,* 65 App. D.C. at 46, 79 F.2d at 171. While this jurisdiction determined that a three-year restriction was unenforceable and invalid in the circumstances presented by *Chemical Fireproofing, supra,* it also proclaimed a five-year restriction within a thirty-mile radius not to be invalid under the circumstances of that case, *see Meyer, supra,* 110 F.Supp. at 959. We did not declare a three-year restriction to be invalid on its face in *Ellis, supra.*

Since the restriction in the case before us is not invalid on its face, we proceed to apply the language of the Restatement to determine the reasonableness of the two-year, five-mile radius restriction.[10] Under §§ 186–188 of the Restatement, promises in restraint of trade are governed by the "rule of reason." *See also Godfrey, Allison, Erikson,* and *Ellis, supra.* The "rule of reason," requiring a determination of the reasonableness of a covenant not to compete, "is a fact intensive inquiry that depends on the totality of the circumstances." *Valley Med. Specialists v. Farber,* 194 Ariz. 363, 982 P.2d 1277, 1283 (1999). It is this fact intensive inquiry

that appears to be lacking in the trial court's analysis in the case before us.[11]

▮ The first critical factor set forth in § 188 of the Restatement is "the promissee's legitimate interest." There is little precedent in this jurisdiction to guide us as to the showing required to establish the promisee's legitimate interest in the type of case that is before us, which involves dentists who were first "partners," and one of whom later became a former "partner" bound by a five and one-half-year rental, management and operational agreement.

Other courts have confronted arguments that a covenant not to compete was invalid because it did not protect a legitimate interest of the "beneficiary" of the restraint. In a medical setting involving an employer and employee, the New Jersey Supreme Court identified "the protection of patient relationships" as a legitimate interest in a case involving a five-year, ten-mile radius restriction on a dermatologist.[12] *Karlin v. Weinberg,* 77 N.J. 408, 390 A.2d 1161, 1166 (1978) ("While it is true that a physician (like any other employer) has no 'legitimate' interest in preventing competition as such, he does have a legitimate interest in the protection of patient relationships.") (internal and final

---

10. *See also* Ferdinand S. Tinio, *Validity and Construction of Contractual Restrictions on Right of Medical Practitioner to Practice, Incident to Sale of Practice,* 62 A.L.R.3d 918 (1975).

11. Comment *a* to § 186 states:

*Rule of reason.* Every promise that relates to business dealings or to a professional or other gainful occupation operates as a restraint in the sense that it restricts the promisor's future activity. Such a promise is not, however, unenforceable unless the restraint that it imposes is unreasonably detrimental to the smooth operation of a freely competitive private economy. A rule of reason of this kind necessarily has somewhat vague outlines. Whether a restraint is reasonable is

determined in the light of the circumstances of the transaction, including not only the particular facts but general social and economic conditions as well. The promise is viewed in terms of the effects that it could have had and not merely what actually occurred. Account is taken of such factors as the protection that it affords for the promissee's legitimate interests, the hardship that it imposes on the promisor, and the likely injury to the public. A restraint that is reasonable in some circumstances may be unreasonable in others.
*Id.* (internal citation omitted).

12. Section 188 of the Restatement treats a promise by a partner not to compete with the partnership in essentially the same way as a promise by an employee not to compete with his or her employer. *See* § 188 cmt. *h.*

citations omitted). Other legitimate interests have been articulated. *See Reddy v. Community Health Found. of Man*, 171 W.Va. 368, 298 S.E.2d 906, 916 (1982) ("employer stands to lose his investment in employee training, have his trade secrets or customer lists converted by the employee, or have his market share threatened by the employee's risk-free entry into the employer's market") (case concerned a three-year, thirty-air miles restriction). The West Virginia Supreme Court emphasized that:

These examples are not intended … as an exhaustive list; the central inquiry must always be the extent to which the employee may unjustly enrich himself by appropriating an asset of the employer for which the employee has not paid and using it against the very employer. If that employer is able to show a protectable interest under the [foregoing] rule …, the covenant *in its entirety* is presumptively enforceable.

*Id.* (emphasis in original).

In the case before us, Dr. Deutsch, as far as we can tell, did not invoke "the protection of patient relationships" as a legitimate interest. Furthermore, the trial court discounted Dr. Deutsch's efforts to argue that he had a legitimate interest in not having Dr. Barsky compete with him for two years in the acquisition of the practices of dentists in the area who retired or moved away. In doing so, the trial court stressed Dr. Deutsch's increased revenues since Dr. Barsky left the 1925 K Street office:

Except for affirming that he has "learned that Dr. Barsky is attempting to purchase the dental practice of another dentist in the downtown Washington area," [Dr. Deutsch] cannot even suggest how [Dr. Barsky] has wrongly availed himself of an advantage derived from his work with [Dr. Deutsch]. Indeed, [Dr. Deutsch] does not dispute that the revenues he derives from his practice have continued to increase from the time [Dr. Barsky] left to begin a separate practice.

The trial judge noted that: "[Dr. Deutsch] explains that he has frequently enlarged his own practice by making such acquisitions."

Why the trial court rejected Dr. Deutsch's claimed legitimate interest is not clear on this record. The court may well have been swayed by Dr. Deutsch's deposition testimony stating, "I'm not worried about [Dr. Barsky] taking my patients," and "I'm not anticipating that my lifestyle will change." Nonetheless, in his "statement of material facts as to which there exists a genuine issue necessary to be litigated," Dr. Deutsch included the following: "Whether Dr. Barsky, by moving his practice just two blocks from 1925 K Street, N.W., in violation of the covenant not-to-compete, is competing with Dr. Deutsch in terms of purchasing the practices of other dentists who are seeking to retire or move out of the District of Columbia, and therefore is causing Dr. Deutsch additional damages which cannot be measured in precise monetary terms?" Dr. Deutsch's own affidavit, as well as that of his expert in dental practice economics, Dr. Thomas Snyder, advanced the theory of a legitimate interest regarding competition in the purchase of the practices of retiring or relocating dentists in the 19th and K Street, N.W. corridor. Viewing the record in the light most favorable to Dr. Deutsch, *see Kelley, supra*, 676 A.2d at 456, summary judgment was inappropriate regarding the factor of "the promissee's legitimate interest" because: (1) genuine issues of material fact existed; and (2) the trial court did not consider whether, as a matter of law, competition in the acquisition of dental practices in the 19th and K Street area, under the circumstances of this case, represented a legitimate interest of Dr.

Deutsch, within the meaning of § 188 of the RESTATEMENT (SECOND) OF CONTRACTS.

▪ The second main factor to be addressed in analyzing the covenant not to compete in this case is the nature of the hardship claimed by Dr. Barsky, which is to be balanced against any legitimate interest of Dr. Deutsch. Apparently, the trial court assumed that the two-year, five-mile radius restriction in the covenant not to compete would impose an undue hardship on Dr. Barsky because he would be relegated "to distant neighborhoods, *e.g.* Brookland [in Northeast Washington], Congress Heights [in Southeast Washington], or Friendship Heights [in Northwest Washington]...." No record evidence is referenced to support this apparent assumption either that those neighborhoods are "distant," or that Dr. Barsky would not be able to earn a living as a dentist, or do well, except at his new address, two blocks from Dr. Deutsch's office.[13] Nor does Dr. Barsky document the hardship he might face if the covenant is enforced.[14] In short, the nature of the hardship claimed by Dr. Barsky is not clear on the record

before us. In that regard, it is insufficient for him to show mere "personal hardship." *See Karlin, supra,* 390 A.2d at 1166 n. 3 ("[A] mere showing of personal hardship does not amount to an 'undue hardship' that would prevent enforcement of the covenant.") (citation omitted).

Here, the trial court did not engage in the balancing required by § 188 of the Restatement, nor determine by reference to specific factual findings, whether Dr. Barsky was able to show that, "given the natural tendency of covenants not to compete towards overbreadth, ... the enforcement of the covenant in its entirety will necessarily overprotect [Dr. Deutsch] because the covenant reflects a degree of protection greater than the implicated [promisee's legitimate interest] merits." *Reddy, supra,* 298 S.E.2d at 916–17. Consequently, viewing the record relating to Dr. Barsky's hardship in the light most favorable to Dr. Deutsch, summary judgment was inappropriate with respect to this Restatement factor.[15]

▪ We dispose of Dr. Barsky's cross-appeal summarily. We see no reason to

---

13. Dr. Barsky asserted that he "takes" $300,000 to $490,000 a year from his practice.

14. Dr. Barsky's main argument against the enforcement of the covenant not to compete centers on his interpretation of Paragraph 16 of the October 1st agreement. His argument is not persuasive. He insists that paragraph 16 is triggered only if Dr. Barsky leaves the practice of dentistry altogether, rather than just the "the leased premises" at 1925 K Street, N.W. However, as Dr. Deutsch argues, the pertinent sentence in paragraph 16 would make no sense if it were interpreted to apply to Dr. Barsky's definitive departure from the practice of dentistry. If his departure from the practice of dentistry were permanent, there would be no need for the time and place restrictions. Thus, paragraph 16 of the October 1st agreement is not ambiguous nor subject to "two or more different meanings...." *National Trade Prods., supra,* 728 A.2d at 109.

15. The trial court appears not to have addressed the third factor, "likely injury to the public." *See* Restatement § 188 cmt. *c; see also Iredell Digestive Disease Clinic v. Petrozza,* 92 N.C.App. 21, 373 S.E.2d 449, 453, 455 (1988) (time and territory restriction of three years and twenty mile radius "appear to be reasonable and not unduly oppressive" under the circumstances of the case, but "the public's interest in adequate health care must predominate over the parties' freedom of contract"); *Duffner v. Alberty,* 19 Ark.App. 137, 718 S.W.2d 111, 113–14 (1986) ("contract provision prohibiting appellant from practicing within thirty miles of the City of Fort Smith constitutes an undue interference with the interests of the public right of availability of the orthopedic surgeon it prefers to use and that the covenant's enforcement would result in an unreasonable restraint of trade").

disturb the trial court's cogent findings and conclusions as to why Dr. Deutsch's contract damages are not ascertainable in lieu of specific enforcement of the covenant not to compete. The trial court declared:

> Review of the pleadings and the papers submitted in connection with the motion for summary judgment reveals that the monetary value of the covenant not-to-compete cannot be calculated with any reasonable certainty.... [Dr. Deutsch] ... asserts flatly that "it is impossible for me to determine the amount of damages I have suffered as a result of Dr. Barsky's violation of the covenant not-to-compete." ... So too does his affiant, Thomas L. Snyder, D.M.D., M.B.A., who affirms that he is of opinion that "it is impossible to calculate with any degree of certainty a dollar amount of damages that Dr. Deutsch has suffered in terms of being required to compete with Dr. Barsky in purchasing other dental practices in the downtown Washington, D.C. area." ... [Dr. Barsky], in turn, counters only that "one would imagine a number of ways [Dr. Deutsch] might go about ascertaining such damages."

No way, then, has been identified by the parties to establish with any reasonable certainty the money damages to which plaintiff would be entitled if the covenant were found to be breached. On appeal, Dr. Barsky's basic argument is that because Dr. Deutsch filed proof of a claim in Dr. Barsky's bankruptcy proceeding, his contract damages are ascertainable, and the covenant not to compete may not be specifically enforced. He maintains that "there are at least two methods for calculating with a reasonable degree of certainty the damages related to [Dr.] Barsky's breach of the agreement, i.e. ei-

ther the $14,000 a month buy-out or the component parts of the services rendered" under the October 1st agreement. But, as Dr. Deutsch responds in his reply brief, the proof of claim in the bankruptcy proceeding "was for rents and other definite payments from Dr. Barsky that Dr. Deutsch lost when Dr. Barsky moved out and filed for bankruptcy. Those damages were ascertainable and concededly were discharged by Dr. Barsky's bankruptcy proceeding." What Dr. Barsky has not shown and could not calculate with any precision, as the trial court recognized, are the damages flowing from Dr. Barsky's decision to conduct a dental practice within two blocks of Dr. Deutsch's practice, in violation of the mutual covenant not to compete. Simply put, we detect no error with respect to the trial court's ruling that contract damages flowing from the breach of the covenant not to compete cannot be ascertained.

Accordingly, for the foregoing reasons, we affirm the trial court's ruling that contract damages flowing from the breach of the covenant not to compete are not ascertainable. However, we reverse its summary judgment relating to the validity and enforceability of the restriction in paragraph 16 of the October 1st agreement and remand the matter to the trial court for further proceedings consistent with this opinion.[16]

*So ordered.*

---

**16.** Since the remaining aspect of this case is an action in equity, all issues will be tried to the court on remand.